Lloyd G. MATTHESS, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and Colonial Insurance Company of California, Appellees,

and

Heritage Mutual Insurance Company, Appellee.

No. 93–217.

Supreme Court of Iowa.

Sept. 21, 1994.

Stephen J. Powell and Mark F. Conway of Swisher & Cohrt, Waterloo, for appellee Heritage Mut. Ins. Co.

Richard S. Fry of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellee Colonial Ins. Co.

Robert R. Rush of Lynch, Dallas, Smith & Harmon, Cedar Rapids, for appellee State Farm Mut. Auto. Ins. Co.

Hugh G. Albrecht of the Tom Riley Law Firm, Cedar Rapids, for appellant.

Considered by HARRIS, P.J., and LARSON, LAVORATO, SNELL, and TERNUS, JJ.

LAVORATO, Justice.

In this personal injury case, the plaintiff appeals from a district court order denying his motion for new trial following a jury trial. In his motion, the plaintiff challenged the verdict as inadequate. The court of appeals agreed, reversed the district court order, and remanded for a new trial on damages. We vacate the decision of the court of appeals and affirm the district court's order denying the motion for new trial.

Lloyd G. Matthess was a car salesperson working on commission for Bruce McGrath Pontiac, Inc. in Cedar Rapids. In June 1990 he was a passenger in a car a customer was test driving when it was struck broadside by a second vehicle at a Cedar Rapids intersection.

The force of the impact caused Matthess' car to flip over and skid into a concrete abutment at the edge of the intersection. Matthess' head and upper torso were pushed out of the driver's side rear window. His injuries included severe lacerations of the scalp and right ear. An attending physician closed these deep wounds and inserted a drain to alleviate fluid retention in the wound areas.

Matthess also sustained (1) fractures of several ribs, (2) wrist lacerations, and (3) a pulmonary contusion with a hemothorax (blood in the pleural cavity surrounding the lung) for which a drain was later inserted into Matthess' chest. He also had a clavicular fracture that was corrected by putting Matthess in a brace and a sling. He remained hospitalized for six days and convalesced at home until August.

In August Matthess returned to a restricted work schedule at Bruce McGrath. He testified his physical condition did not improve and he was plagued by constant, pounding headaches that would radiate to his neck, shoulders, and back.

On August 29—on the advice of counsel—Matthess saw Dr. Marc Hines, a neurologist. In his deposition, Hines testified that Matthess suffered from (1) possible orbital frontal cortex injury, (2) significant chronic pain with posttraumatic headache, (3) posttraumatic trigger point dysfunction, (4) myofacial pain secondary to neck, shoulder, and low back injury, and (5) secondary depression. Hines prescribed physical therapy, anti-inflammatory and pain medications, antidepressants, and additional testing. An electroencephalogram showed abnormal slowing in the temporal areas of Matthess' brain.

Hines further reduced Matthess' work schedule at Bruce McGrath to two hours a day, three days a week. Because Matthess could not sustain this schedule, Hines removed Matthess from work altogether in late September.

On Hines' recommendation, Matthess saw Dr. Darlene Ehlers, a chiropractor, in late October. In her deposition, Ehlers testified that Matthess suffered from (1) acute hyperextension/hyperflexion injury with swelling in the cervical and thoracic spine, (2) headaches, (3) myofibrositis of the cervical and thoracic spine, (4) myofascitis of the cervical and thoracic spine, (5) segmental dysfunction in the cervical and thoracic vertebra, and (6) chronic pain.

Neurologist Dr. Richard F. Nieman examined Matthess in February 1991. He did so on behalf of the defense. According to Nieman's deposition testimony, Matthess suffered from a soft tissue injury of the cervical spine. He recommended a physical therapy program concentrating on soft tissue rehabilitation. Nieman saw Matthess again in April when he learned that Matthess had not started physical therapy. Nieman again suggested physical therapy to Matthess as the most appropriate way to improve his condition.

Nieman ultimately rated Matthess' range of motion impairment at four to sixteen percent. He believed that Matthess could reduce this rating with physical therapy. He also suggested that Matthess quit taking the various narcotic medications prescribed by Hines. Matthess did not follow either suggestion.

Matthess underwent a course of treatment with Ehlers and continued treatment with Hines. Hines told Matthess to return to work in March 1991. Bruce McGrath terminated his employment in June. Since then, Matthess has worked in his stepfather's diesel repair business. Matthess testified that he works forty to fifty hours per week without pay.

Without Matthess' knowledge, one of the defendants had Matthess under surveillance in August 1992. For about five days, a private investigator videotaped Matthess' activities at his stepfather's shop. The jury saw a redacted version of the tape, in which Matthess is seen doing heavy lifting and operating other equipment.

Matthess never looked for—nor returned to—a salaried job. He testified that he can do "almost everything [he] did before the accident." He also testified that he continues to experience painful headaches, neck, and back pain although his headaches "definitely are getting better" and his neck and back pain have "improved significantly."

In June 1991 Matthess sued the three insurance companies that had issued automobile liability policies on the individuals and vehicles in the accident. Heritage Mutual Insurance Company (Heritage) had insured the car owned by Bruce McGrath. The driver of that car was insured by Colonial Insurance Company of California (Colonial). State Farm Automobile Insurance Company (State Farm) insured Matthess. Matthess sought damages from each insurer under their respective underinsured coverage provisions.

The district court sustained State Farm's and Colonial's motions for severance. Trial proceeded against Heritage alone on the stipulation that State Farm and Colonial would be bound by the verdict.

Before trial, Matthess settled with the driver that struck his car for $20,000, the policy limits. The jury's $50,085 verdict was broken down as follows on the special verdict form:

| | | |
|---|---|---|
| 1. | Past medical expenses | $20,085.00 |
| 2. | Future medical expenses | $ 4,500.00 |
| 3. | Past lost wages | $14,000.00 |
| 4. | Loss of future earning capacity | $ 4,500.00 |
| 5. | Past loss of body function | $ 2,500.00 |
| 6. | Future loss of body function | $ 1,000.00 |
| 7. | Past pain and suffering | $ 2,500.00 |
| 8. | Future pain and suffering | $ 1,000.00 |
| | | $50,085.00 |

Matthess moved for a new trial. He alleged that the verdict was (1) inadequate as a matter of law, (2) not supported by substantial evidence, and (3) inadequate to achieve substantial justice between the parties. The district court denied the motion.

Matthess appealed from the district court's order denying his motion for a new trial. We transferred the case to the court of appeals. In a 3–2 decision the court of appeals reversed and remanded the case for a new trial on damages. We granted Heritage's application for further review.

■■■ We recognize that an inadequate damages award merits a new trial as much as an excessive one. Iowa R.Civ.P. 244; *Witte v. Vogt,* 443 N.W.2d 715, 716 (Iowa 1989). Our review on this question is for abuse of discretion. *Vogt,* 443 N.W.2d at 716. Whether damages in a given case are adequate depends on the particular facts of the case. *Id.* The test is whether the verdict fairly and reasonably compensates the injury the party sustained. *Householder v. Town of Clayton,* 221 N.W.2d 488, 493 (Iowa 1974).

Recently, we reviewed extensively our cases involving questions of inadequate awards where the awards were approximately equal to or less than the special damages. *See Cowan v. Flannery,* 461 N.W.2d 155, 158–59 (Iowa 1990). We discovered we had not adopted an inflexible rule that every verdict awarding only special damages is inadequate as a matter of law. Our survey of the cases showed that

[w]e have affirmed the court's granting of a new trial where the evidence material to the damage award is undisputed and the damage award was approximately equal [to] or less than the special damages.

We have reversed the court's denial of a new trial where evidence material to the damage award is undisputed and the award was nearly equal [to] or less than the special damages.

We have affirmed the trial court's denial of a new trial where the evidence of the cause or the extent of injury was disputed.

We have also reversed the granting of a new trial based on inadequate damages where the evidence as to the nature, extent and severity of the injuries was disputed.

*Id.* at 159 (citations omitted).

Here the jury awarded Matthess substantial special damages. It also awarded him (1) $4500 for loss of future earning capacity, (2) $2500 for past loss of body function, (3) $1000 for future loss of body function, (4) $2500 for past pain and suffering, and (5) $1000 for future pain and suffering. Matthess complains because he thinks the award for the noneconomic elements of damages is not sup-

ported by the evidence and so is inadequate as a matter of law. The noneconomic elements of damages include (1) $2500 for past loss of body function, (2) $1000 for future loss of body function, (3) $2500 for past pain and suffering and (4) $1000 for future pain and suffering. For reasons that follow, we think the award for the noneconomic elements of damages is supported by substantial evidence.

Had there been a general verdict, the $50,085 award here would have likely met our adequacy standard. This is so because we would have had no way of knowing how the jury compensated Matthess for each element of damages.

■ Because of damages itemization, the jury must now tell us what it is awarding for each element of damages. *See* Iowa Code § 668.3(8) (1989). And each itemization is a special jury finding that must be supported by the evidence. If such finding is not supported by the evidence, the plaintiff is entitled to a new trial. *Cowan*, 461 N.W.2d at 158.

*Cowan* is a good example of how the damages itemization rule works. There the jury awarded the plaintiff past and future medical expenses totaling $21,220 but nothing for pain and suffering. We concluded it was illogical for the jury to award the plaintiff $21,220 for past and future medical expenses to relieve headaches, neck and back pain and then allow nothing for physical pain and suffering. In these circumstances, "[a]lthough the award may be adequate, a special verdict award of nothing for pain and suffering is inconsistent and unsupported by evidence." *Id.* at 160.

In contrast, the jury here awarded substantial special damages and awarded damages for the noneconomic elements of damages in question. The facts here fit the scenario where the evidence as to the extent and severity of the injuries is in dispute.

■ We think several facts led the jury to award Matthess what it did on the noneconomic elements of damages. The plastic surgeon who treated the head wound testified by deposition that Matthess had a good result from the surgery and an uneventful recovery from the scalp laceration. The cardiothoracic surgeon who treated Matthess' chest injuries testified these injuries healed on their own with no permanent impairment.

In their depositions, the plastic surgeon and the cardiothoracic surgeon testified that there was no neurological injury when they treated Matthess so they did not consult a neurologist. It was Matthess' attorney who referred him to a neurologist who in turn referred him to a chiropractor.

Neurologist Nieman called into question some of the diagnoses and treatment rendered by Matthess' neurologist and chiropractor. Nieman thought Matthess was suffering from a soft tissue injury that could effectively be treated with physical therapy rather than with long-term use of narcotic medication. (Matthess on many occasions did not take the doses of medication his neurologist prescribed.) Nieman was also concerned about the chiropractic treatment. Depending upon the type of manipulation involved, such treatment could, according to Nieman, prove to be counterproductive.

As mentioned, Nieman gave Matthess a four to sixteen percent impairment rating. But Nieman thought the sixteen percent rating could be reduced to four percent if Matthess would undergo the physical therapy Nieman had suggested. Matthess, however, did not follow the suggestion. Nieman thought the physical therapy would, beyond lessening the impairment, decrease Matthess' discomfort.

The defense impeached Matthess on several grounds. In our view the impeachment could have dramatically influenced the jury on Matthess' claim regarding the noneconomic elements of damages in question.

First, Matthess testified he could no longer do repair work to his income properties. Later, he testified that he had done little or no repair work on the properties since 1987

because of his long hours as a used car salesperson.

Second, Matthess' interrogatory answers said nothing about working for his stepfather. And he never told the defense that he was doing any kind of work after the accident other than at McGrath's. At trial, Matthess conceded the answers to interrogatories on this point were not accurate.

Third, the surveillance videotape could have considerably weakened Matthess' case. The investigator videotaped Matthess at work over a five-day period. There were six hours of videotape and about twenty hours of actual work time. As mentioned, the jury saw a redacted version of the tape. We have reviewed the tape and agree with Heritage that it is indeed "worth a thousand words." The tape shows Matthess (1) using a roller to maneuver under vehicles, (2) lifting heavy objects, and (3) operating a forklift and other equipment.

Last, Matthess testified that he worked for his stepfather forty to fifty hours per week without pay. The jury could have reacted to the "without pay" testimony as unbelievable. (The stepfather laid off a full-time mechanic at about the same time Matthess began working for him.) But more important, forty to fifty hours per week of heavy manual labor would—to any reasonable person—substantially belie a claim of disability and debilitating pain.

In a case where a personal injury plaintiff unsuccessfully challenged a verdict as inadequate, this court aptly observed:

> While the jury as the trier of fact is not warranted in arbitrarily or capriciously rejecting the testimony of a witness, neither is it required to accept and give effect to testimony which it finds to be unreliable, although it may be uncontradicted. Testimony may be unimpeached by any direct evidence to the contrary and yet be so contrary to natural laws, inherently improbable or unreasonable, opposed to common knowledge, inconsistent with other circumstances established in evidence, or so contradictory within itself, as to be subject to rejection by the court or by the jury as trier of the facts.

*Kaiser v. Stathas,* 263 N.W.2d 522, 526 (Iowa 1978) (citation omitted).

There was considerable conflict in the evidence on the extent and severity of Matthess' injuries. So we think the jury was in the best position to judge the credibility of the witnesses and to make the judgment call about what the noneconomic elements of damages were worth. That is exactly what juries are for. We should not set aside a verdict simply because we might have reached a different conclusion. Were we to do so, we would be relegating juries to "unimportant window dressing." *Lantz v. Cook,* 256 Iowa 409, 413, 127 N.W.2d 675, 677 (1964).

Given this conflict in the evidence, we think the jury fairly and reasonably compensated Matthess for the injuries he sustained. The evidence supports what the jury awarded for the noneconomic elements of damages and supports the verdict overall.

Finding no abuse of discretion, we affirm the district court's order denying Matthess' motion for new trial.

**DECISION OF THE COURT OF APPEALS VACATED; ORDER OF THE DISTRICT COURT AFFIRMED.**