# IN THE SUPREME COURT OF IOWA

No. 31 / 05-1407

Filed May 11, 2007

**DAVID FELDERMAN, Executor of the Estate
of MARY BELLE WESTPHAL, Deceased,**

Appellant,

vs.

**CITY OF MAQUOKETA, IOWA,**

Appellee.

---

Appeal from the Iowa District Court for Jackson County, Mark J. Smith, Judge.

Appeal from a district court ruling directing a verdict in favor of the defendant. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Robert F. Wilson of Wilson, Matias, Hauser & Den Beste, Cedar Rapids, for appellant.

Michael C. Walker of Hopkins & Huebner, P.C., Davenport, for appellee.

**WIGGINS, Justice.**

In this case we must decide if the district court was correct when it directed a verdict in favor of the City of Maquoketa in a personal injury action. Because the district court correctly directed the verdict in favor of the City, we vacate the decision of the court of appeals and affirm the judgment of the district court.

On July 8, 2003, Mary Belle Westphal went to the Maquoketa Community Center to watch her great-grandson attend a swimming class. It was a rainy day, so the swimming class was held indoors at the center. Westphal walked up the center's front stairs. She reached the landing on the top of the stairs, but after pulling on the front door, she fell backward, flew through the air, and landed at the base of the stairs. No one witnessed Westphal's fall. Westphal suffered multiple elbow fractures, a fractured shoulder, a fractured hip, a fractured rib, and a gash in her head. She was in and out of the hospital and other care facilities from the time of the fall until May 2004 when she died.

Westphal's estate brought a negligence action against the City. The estate's petition alleged the City was negligent in the design, construction, and maintenance of the center. The matter proceeded to a jury trial. At the close of the estate's case, the City moved for a directed verdict. The district court granted the motion finding there was insufficient evidence to create a jury question on the issue of liability. The estate appealed the directed verdict.

We transferred the case to our court of appeals. The court of appeals upheld the district court's directed verdict with respect to the estate's negligent design and construction claims. However, the court of appeals determined the evidence generated a jury question on whether the City

negligently maintained the center's front entrance. The court of appeals remanded the case to the district court for a retrial.

The City petitioned our court for further review and this court granted the petition.

We review the district court's grant of a directed verdict for correction of errors at law. *Determan v. Johnson*, 613 N.W.2d 259, 261 (Iowa 2000). In doing so we take into consideration all reasonable inferences that could be fairly made by the jury and view the evidence in the light most favorable to the nonmoving party. *Yates v. Iowa West Racing Ass'n*, 721 N.W.2d 762, 768 (Iowa 2006). If there is substantial evidence in the record to support each element of a claim, the motion for directed verdict must be overruled. *Id.* Evidence is substantial when reasonable minds would accept the evidence as adequate to reach the same findings. *Id.*; *see also Determan*, 613 N.W.2d at 261. "Our role, then, is to determine 'whether the trial court correctly determined that there was insufficient evidence to submit the issue . . . to the jury.'" *Determan*, 613 N.W.2d at 261 (quoting *Hasselman v. Hasselman*, 596 N.W.2d 541, 545 (Iowa 1999)).

*I. Negligent Design and Construction.* Viewing the evidence in the light most favorable to the estate, the evidence establishes the center's front threshold, doors, landing, railings, and stairs had not been reconstructed since 1967 when the building was erected. The estate argues the City's answer to an interrogatory indicates in approximately 1992 the City replaced the outside exterior front doors and in approximately 1999 the City installed new latches on the outside doors. However, the estate never made this interrogatory answer a part of the record. Accordingly, we will not consider the answer in deciding this appeal.

The only evidence supporting a negligent design or construction theory came from the estate's expert. He testified the center's front landing, stairs, and railings failed to comply with certain provisions of the ADA Standards for Accessible Design. The ADA standards relied upon by the expert were revised as of July 1, 1994. *See* 28 C.F.R. pt. 36 app. A (1994).

The Code provides a city is immune from liability for negligent design or construction of a public facility if the facility "was constructed or reconstructed in accordance with a generally recognized engineering or safety standard, criteria, or design theory in existence at the time of the construction or reconstruction." Iowa Code § 670.4(8) (2003). A city is not required to upgrade, improve, or alter any aspect of an existing public facility to new, changed, or altered design standards. *Id.* The person making a negligent design or construction claim holds the burden to establish the city did not construct or reconstruct the public facility in accordance with a generally recognized engineering or safety standard, criteria, or design theory in existence at the time of the construction or reconstruction. *Fischer v. City of Sioux City*, 695 N.W.2d 31, 34 (Iowa 2005).

The estate offered no proof of the City's failure to adhere to a generally recognized engineering or safety standard, criteria, or design theory in existence in 1967 when the center was constructed. Consequently, the estate's claims based on negligent design and construction must fail.

In its reply brief the estate raises for the first time its argument that the City purchased insurance; thus, its immunity for negligent design and construction is waived. *See* Iowa Code § 670.4; *see also City of West Branch v. Miller*, 546 N.W.2d 598, 604 (Iowa 1996) (stating "if a liability insurance policy is purchased covering the section 670.4 exceptions, governmental immunity is waived as to those exceptions to the extent stated in the

policy"). The estate failed to raise the waiver of immunity issue in the district court. Ordinarily we do not decide an issue on appeal that was not raised by a party or decided by the district court. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Accordingly, we will not address the waiver issue for the first time on appeal.

Therefore, we affirm the district court's ruling granting the City a directed verdict on the estate's claims for negligent design and construction.

*II. Negligent Maintenance.* Section 670.4(8) does not provide a city with immunity for negligent maintenance. Iowa Code § 670.4(8); *see also Radley v. Transit Auth.*, 486 N.W.2d 299, 302 (Iowa 1992) (holding "Iowa has a policy that permits suits against the state for negligent maintenance of highways"). Generally, questions of negligence and proximate cause are for the jury. *Larkin v. Bierman*, 213 N.W.2d 487, 488 (Iowa 1973). Only in exceptional cases can a court decide questions of negligence and proximate cause as a matter of law. *Id.*

The undisputed evidence establishes the entrance to the center had two front doors, a right door and a left door. Viewing the evidence in the light most favorable to the estate, reasonable minds could find Westphal was unable to pull open the door to gain access to the center. Further, reasonable minds could accept that the force Westphal exerted to pull open the door caused her to lose her grip of the handle, fall backward, and land at the base of the stairs.

We also find reasonable minds could determine Westphal attempted to open either the right or the left door. We base this conclusion on Westphal's testimony, taken by the City's insurance adjuster, and admitted into evidence by the district court. In her statement Westphal initially stated when she tried to enter the center she attempted to pull open the

right door. Later in her statement Westphal said she was somewhat confused by the references to the right and the left. She then changed her statement and said the door she attempted to pull open was the left door.

Regardless if reasonable minds determine Westphal lost her grip on the right door or the left door, the estate's claim for negligent maintenance cannot withstand the City's motion for directed verdict. It does not matter which door Westphal lost her grip on because there is no evidence in the record to establish the City did not properly maintain either door on the day Westphal fell.

The estate attempted to offer evidence of negligent maintenance through the testimony of its expert and Westphal's granddaughter-in-law. This testimony, however, does not establish the City failed to maintain either of the center's front doors at the time of Westphal's fall.

The estate's expert based his testimony on Westphal's statement that she was trying to open the left door and on his inspection, some two years after Westphal's fall, of the center's front threshold, doors, landing, railings, and stairs. The expert testified the left door was the "active" door. The expert further testified there were markings on the concrete below the left door indicating a door had previously dragged on the landing. He was unable to testify when these markings were made on the concrete.

On the day the expert made his inspection, the doors were locked and unavailable for testing. Therefore, he was not able to open or close the left door to determine if it made or was making the markings on the concrete. He was also unable to determine if there were any other problems with the left door. The expert testified he did not know if the door was difficult to open or not. Additionally, he testified even if he knew the door was difficult to open on the day of his inspection, this fact does not mean the door would

have been difficult for Westphal to open on the day of her fall. Thus, specific to the day of Westphal's fall, the expert could not and did not give any opinion regarding a maintenance problem with the center's left door. Accordingly, there was not substantial evidence in the record so reasonable minds could find the City failed to properly maintained the center's left door at the time of Westphal's fall.

Westphal's granddaughter-in-law provided the only evidence regarding the right door. She testified that on the day of Westphal's fall, she arrived at the center shortly before Westphal. As she attempted to pull the right door open, the granddaughter-in-law held her child with her left hand. She was unable to pull the right door open. She thought the door was locked. After pulling on the door twice, someone from inside the center came and opened the door for her.

The granddaughter-in-law's testimony does not establish that the City failed to maintain the right door at the time of Westphal's fall. At best, this testimony supports the testimony of the estate's expert that the left door was the only active door. If the right door was locked, as Westphal's granddaughter-in-law thought, the door failed to open because it was locked not because the City failed to maintain the right door at the time of Westphal's fall. Accordingly, there was not substantial evidence in the record so reasonable minds could find the City failed to properly maintain the center's right door at the time of Westphal's fall.

Consequently, this is one of those exceptional cases where the court should find, as a matter of law, a fact question regarding the issue of negligence or proximate cause was not generated by the evidence. Therefore, we must affirm the decision of the district court when it directed a verdict in favor of the City.

Because the district court correctly directed the verdict in the City's favor, we vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Hecht, J., who takes no part.