# IN THE SUPREME COURT OF IOWA

No. 50 / 06–0936

Filed June 20, 2008

**STEVEN EASTON,**

      Appellee,

vs.

JEANETTE HOWARD,

      Defendant,

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY
(MEMBER OF AMERICAN FAMILY INSURANCE GROUP),**

      Appellant.

---

On review from the Iowa Court of Appeals.


Appeal from the Iowa District Court for Delaware County, John Bauercamper, Judge.


An uninsured motorist carrier asks for further review of a decision of the court of appeals. **DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED, AND CASE REMANDED WITH DIRECTIONS.**


Ted J. Wallace, Davenport, for appellant.


Jason D. Walke of Gunderson, Sharp and Walke, L.L.P., Des Moines, for appellee.

**WIGGINS**, **Justice.**

An uninsured motorist carrier appeals a jury verdict alleging substantial evidence does not support the verdict. Our court of appeals affirmed the judgment of the district court by finding substantial evidence supported the verdict. However, upon further review, we find that substantial evidence did not support a finding that the driver of the vehicle was negligent; therefore, we vacate the decision of the court of appeals, reverse the judgment of the district court as to the uninsured motorist carrier, and remand the case to the district court to enter judgment in favor of the uninsured motorist carrier.

## I. Background Facts and Proceedings.

Steven Easton and his girlfriend, Jeanette Howard, traveled with their daughters to the home of Howard's parents. They arrived at the residence at approximately noon and left between ten and eleven o'clock that evening. Howard consumed approximately ten cans of beer throughout the day while Easton consumed between six to eight beers.

At the end of the evening, Howard drove the couple's pickup truck the sixty or seventy miles back to their home. Howard drove because Easton did not want to jeopardize his commercial driver's license by operating a motor vehicle after drinking. The drive home was uneventful.

When Easton and Howard arrived home, he suggested they leave their residence to have a discussion outside the presence of their children. Howard drove them to a local park approximately one mile from their home. At the park the couple argued. When they left the park Howard turned in the opposite direction of their home. Howard drove approximately one mile in the wrong direction before making a u-turn.

Before she completed the u-turn, Easton emerged from the passenger-side door of the pickup truck. There were no other vehicles on

the road when Howard made the u-turn. Although Howard does not know how fast she was traveling when she made the u-turn, she did not turn the vehicle any sharper than she ordinarily did when making such a turn. There were no marks on the road to indicate the path of the vehicle or its speed. Howard was able to come to a stop after she realized Easton had left the truck. Howard admits she was still "drunk" at the time she left the park, and that "as far as [she] know[s]" she was still drunk at the time she made the u-turn.

Easton was not wearing his seatbelt at the time he left the truck. Easton has no memory of the incident, and Howard did not see how Easton left the vehicle.

Easton filed a petition against Howard alleging her negligence was a proximate cause of the damages Easton suffered when he hit the ground. Easton joined American Family Mutual Insurance Company as a party because it provided uninsured motorist coverage.

There were three possible theories presented at trial as to how the incident occurred: (1) the door was defective and Easton fell out of the truck; (2) Howard made a sharp u-turn and as a result Easton accidentally pulled on the passenger-side door handle, opened the door himself, and fell out; and (3) Easton voluntarily opened the door of the truck and tried to jump out. The defendant's expert engineer, who inspected the truck, testified he could not conclusively rule out any of these theories.

As to the first theory, that the door latch failed and Easton fell from the truck, Easton's testimony was that the door did not latch properly all of the time. Howard's testimony at trial was that the door latched fine. However, an American Family claims investigator testified

that during an interview Howard told her there were some problems with the door not closing.

The expert engineer testified he could not find anything defective with the door latch. He testified there was some weather strip molding loose around the passenger door, and when he manually moved the molding six to eight inches to purposefully interfere with the door, the door only locked in the secondary position, not the primary position. The expert clarified on cross-examination the molding did not inhibit the opening and closing of the door unless he moved it. He further testified even if the door latched in the secondary position, Easton would still have needed to pull on the handle to open the door. He also testified he could not rule out the possibility that the door malfunctioned but that it was unlikely. Finally, the expert testified he did not know how much Easton weighed, how fast Howard was driving, or how much force Easton could have generated against the door.

Additionally, Howard testified the truck had a standard dome light that would come on when the vehicle doors were open. The expert, who inspected the dome light and dashboard warning lights in the vehicle, testified they were all working properly. Howard testified she did not notice any beeps, lights, or other noises to signal the door was ajar when they left the park.

As to the second theory, that Easton accidentally opened the door and fell out, the expert testified that due to the placement of the door handle, it is possible someone would grab for the handle during a u-turn and accidentally open the door. The expert testified this might be especially likely during a sharp u-turn.

As to the final theory, that Easton purposefully opened the door and tried to jump from the vehicle, the expert testified he could not

conclude it is more likely than not Easton jumped from the vehicle. Howard made a written statement that was introduced into evidence that indicated Easton fell out of the truck. In her statement Howard also stated she was not sure if the door was latched or shut. When confronted about the statement on direct examination by Easton, Howard testified she told the police the truth. There was also testimony by the American Family claims investigator that during her interview with Howard she learned Easton "fell" out of the truck. On cross-examination, however, Howard testified she believed Easton opened the door himself and jumped out. She reasoned that they were arguing heavily and every time Howard and Easton would argue, Easton would want "to get away from the situation like in the past when he's left for days at a time."

Easton testified it was possible that he opened the door himself. A physical therapy record was introduced at trial that indicated Easton was injured when he "jumped from a moving truck." Easton testified he did not tell his physical therapist this information.

At the conclusion of the evidence, American Family moved for a directed verdict, arguing there was insufficient evidence to prove Howard was negligent, or that her negligence caused Easton's injury. The court overruled the motion.

After the parties debated the jury instructions, the court submitted only two specifications of negligence to the jury. The specifications were whether Howard was operating the vehicle while intoxicated and whether she failed to maintain control of the vehicle. The jury was instructed they had to find Howard negligent in both respects for Easton to recover.

The jury returned a verdict in favor of Easton. They found Howard was sixty-five percent at fault and assigned the remaining thirty-five

percent of the fault to Easton. American Family filed a motion for judgment notwithstanding the verdict, or in the alternative a motion for new trial, arguing Easton failed to prove negligence and proximate cause. The court denied American Family's motion. American Family appealed, and we routed the case to the court of appeals.

The court of appeals affirmed the judgment of the district court. American Family petitioned for further review, which we granted.

## II. Issue.

The only issue we must decide is whether substantial evidence supports the verdict.

## III. Scope of Review.

Our rule governing motions for judgments notwithstanding the verdict provides:

> If the movant was entitled to a directed verdict at the close of all the evidence, and moved therefor, and the jury did not return such verdict, the court may then either grant a new trial or enter judgment as though it had directed a verdict for the movant.

Iowa R. Civ. P. 1.1003(2). The purpose of the rule is to allow the district court an opportunity to correct any error in failing to direct a verdict. *Bangs v. Maple Hills, Ltd.*, 585 N.W.2d 262, 268 (Iowa 1998); *Meeker v. City of Clinton*, 259 N.W.2d 822, 827 (Iowa 1977). A motion for judgment notwithstanding the verdict must stand on the grounds raised in the movant's motion for directed verdict. *Watson v. Lewis*, 272 N.W.2d 459, 461 (Iowa 1978).

We review the district court's denial of a directed verdict for correction of errors at law. *Anderson v. State*, 692 N.W.2d 360, 363 (Iowa 2005). In doing so we view the evidence in the light most favorable to the nonmoving party and take into consideration all reasonable

inferences that could be fairly made by the jury. *Felderman v. City of Maquoketa,* 731 N.W.2d 676, 678 (Iowa 2007). If substantial evidence in the record supports each element of a claim, the motion for directed verdict must be overruled. *Id.* When reasonable minds would accept the evidence as adequate to reach the same findings, evidence is substantial. *Id.* On appeal our role is to determine whether the trial court correctly determined there was sufficient evidence to submit the issue to the jury. *Id.*

### IV. Discussion.

The district court's marshalling instruction explained to the jury that in order for Easton to recover he had to prove the following propositions:

1.  The defendant [Howard] was negligent in the operation of the motor vehicle in *both* of the following ways:

    a.  Operating a motor vehicle while intoxicated.

    b.  Failure to maintain control of a motor vehicle.

2.  The negligence of the defendant [Howard] was a proximate cause of damage to the plaintiff.

(emphasis added).

Neither party objected to this instruction; thus, it is the law of the case. *Boham v. City of Sioux City,* 567 N.W.2d 431, 435 (Iowa 1997). As to Easton's burden of proof, the court instructed the jury as follows:

> Whenever a party must prove something they must do so by the preponderance of the evidence.
>
> Preponderance of the evidence is evidence that is more convincing than opposing evidence. Preponderance of the evidence does not depend upon the number of witnesses testifying on one side or the other.

Under the first proposition of the marshalling instruction, the fact that Howard was intoxicated at the time of the incident is insufficient to

prove her negligence. The record must show substantial evidence to support that Howard failed to maintain control of her vehicle in order for Easton's negligence claim to survive American Family's motion for directed verdict. *Felderman*, 731 N.W.2d at 678.

On the issue of failure to maintain control, the district court instructed the jury as follows:

> A driver must have her vehicle under control. It is under control when the driver can guide and direct its movement, control its speed and stop it reasonably fast.
>
> A violation of this duty is negligence.

This instruction is consistent with the common-law duty of a driver to maintain control of his or her vehicle. *Matuska v. Bryant*, 260 Iowa 726, 734, 150 N.W.2d 716, 720–21 (1967).

Negligence is fault, and it is the plaintiff's burden to prove fault by a preponderance of the evidence. *Fanelli v. Illinois Cent. R.R.*, 246 Iowa 661, 664, 69 N.W.2d 13, 15 (1955). It is not to be assumed from the mere fact of an accident and an injury. *Id.* One theory of how the incident occurred is that Howard made a sharp u-turn causing Easton to accidentally pull the handle of the truck door, open it, and fall out; however, there is no direct or circumstantial evidence other than the mere fact of the accident and Easton's injuries to prove this theory.

There were no witnesses to the incident other than Howard and Easton. Howard testified she did not turn the vehicle any sharper than she ordinarily did when making such a turn, and she was able to come to a complete stop once she noticed Easton left the vehicle. Howard's vehicle left no skid, scuff, or other marks on the pavement that would indicate her vehicle sharply changed directions or that her vehicle was traveling at a high rate of speed when she attempted to make the u-turn.

The inside passenger door of the vehicle did not exhibit any damage indicating Easton was thrown against the door.

The contradictory testimony by Howard and Easton as to whether Easton "jumped" or "fell" out of the truck does not make either theory more convincing than the other. Additionally, the evidence supports the conclusion that the door latch was working properly at the time of the incident.

Without presenting any evidence other than the fact Howard was intoxicated and that Easton left the vehicle when Howard attempted to execute the u-turn, the jury is left to speculate as to whether she lost control of her vehicle at the time of the incident. As we have said long ago:

> Undoubtedly it is not enough there is a mere possibility that the injury is chargeable to the negligence of defendant, and a recovery may not rest wholly on conjecture. There is no case for a jury where the evidence leaves the happening of the accident a mere matter of conjecture and as consistent with the theory of absence of negligence as with its existence. Undoubtedly the plaintiff fails if as matter of law the testimony is in equipoise. Undoubtedly it does not suffice where a conclusion which is consistent with the theory of the plaintiff is as matter of law equally consistent with some other theory. But as said in *Lunde v. Cudahy*, 139 Iowa 688, 697, 117 N.W. 1063, 1068 (1908), this does not require plaintiff to prove either negligence or proximate cause beyond a reasonable doubt, and where the proven circumstances are such that different minds may reasonably draw different conclusions, or where all the known facts point to the negligence of the defendant as the cause, then, though the evidence be wholly circumstantial, proximate cause is for a jury. It suffices that inferences which plaintiff demands may fairly be drawn.

*George v. Iowa & S.W. Ry.*, 183 Iowa 994, 997–98, 168 N.W. 322, 323 (1918) (internal citations omitted).

These principles of law are still good today. We find the evidence supporting Easton's theory that Howard failed to maintain control of her

vehicle is equally consistent with the evidence supporting American Family's theory that Easton opened the door to exit the vehicle when Howard slowed the vehicle to make the u-turn. We have previously stated:

> "Under our law it is just as pernicious to submit a case to a jury and permit the jury to speculate with the rights of citizens when no question for the jury is involved, as it is to deny to a citizen his trial by jury when he has the right."

*True v. Larimore*, 255 Iowa 451, 460, 123 N.W.2d 5, 10 (1963) (quoting *J.C. Penny Co. v. Robison*, 193 N.E. 401, 404 (Ohio 1934)). Accordingly, the record did not contain substantial evidence to support the verdict, and the district court should have granted American Family's motions for directed verdict and judgment notwithstanding the verdict.

## V. Disposition.

Because we did not find substantial evidence to support the jury's verdict on the issue of Howard's negligence, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand the case to the district court to enter judgment in favor of American Family.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT REVERSED, AND CASE REMANDED WITH DIRECTIONS.**

All justices concur except Baker, J., who takes no part.