# IN THE COURT OF APPEALS OF IOWA

No. 16-1539
Filed November 8, 2017

**ARRAHMEEN TAYLOR,**
        Plaintiff-Appellant/Cross-Appellee,

**vs.**

**CC RECYCLING, L.L.C.,**
        Defendant-Appellee/Cross-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Paul D. Miller, Judge.

Arrahmeen Taylor appeals and CC Recycling, L.L.C. cross-appeals a district court ruling following a civil jury trial. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED ON APPEAL; REVERSED AND REMANDED ON CROSS APPEAL.**

Larry J. Thorson of Ackley, Kopecky & Kingery, L.L.P., Cedar Rapids, and Richard A. Pundt of Pundt Law Office, Cedar Rapids, for appellant.

Bradley J. Kaspar and Matthew G. Novak of Pickens, Barnes & Abernathy, Cedar Rapids, for appellee.

Heard by Danilson, C.J., Mullins, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**MULLINS, Judge**

Arrahmeen Taylor appeals a district court ruling following a civil jury trial denying his motion for a new trial and shifting the costs of the action to him under Iowa Code chapter 677 (2016). Taylor argues (1) the district court abused its discretion in denying his motion for a new trial because the jury's overall award on his claim was inadequate and defense counsel engaged in misconduct during the proceedings[1] and (2) his failure to accept the defendant's offer to confess judgment did not justify shifting the costs of trial to him because the defendant did not give him proper notice of an offer to confess judgment.

CC Recycling, L.L.C. ("CC") cross-appeals the same ruling, which also denied its motion for judgment notwithstanding the verdict with regard to the jury's award of past medical expenses. Specifically, CC argues Taylor failed to meet his burden to prove the reasonable value of his past medical expenses.

I. **Background Facts and Proceedings**

CC is in the business of recycling scrap metal and salvaging automobile parts. In November 2012, Taylor and Elmer Mims transported various pieces of scrap metal to CC using a pickup truck. One of these items was a large, metal pole weighing approximately five hundred pounds. After arriving at CC and

---

[1] Specifically, Taylor argues the award was inadequate because no reasonable jury could have allocated forty-five percent of the fault associated with the underlying incident to him, the jury's awards for past loss of bodily function and past pain and suffering were insufficient in comparison to the injury suffered, and the testimony of his medical expert that he suffered a serious and permanent injury was not contradicted. With regard to the alleged misconduct, he asserts the defendant concealed a witness for trial advantage and encouraged the same witness to perjure himself at trial. Taylor finally argues the result of the case may have been the product of implicit bias based on race. Because Taylor did not raise the implicit bias issue in his motion for a new trial, we do not consider it on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

weighing the items contained in the truck, one of CC's employee's, Pierre Baugh, attempted to manually unload the pipe from the bed of the truck, but Taylor and Mims advised him it would be too heavy to move on his own. Mims backed away from the truck as a safety precaution when he noticed Baugh start to tremble while he was trying to lift the pole. Taylor laughed at Baugh and began to walk away from the truck while Baugh continued his efforts, but as Taylor was walking away, Baugh lost control of the pole, and the pole ultimately came into contact with Taylor's head. Taylor was knocked unconscious, and his head was bloodied. There was machinery nearby that Baugh could have used to remove the pole from the truck.

On the day of this occurrence, Taylor and Mims did not wear hard hats while in the scrapyard, they were not offered hard hats by CC, and they were unaware of any requirement that they wear one while in the scrapyard. According to CC's facility manager, however, CC employed a policy that the wearing of hard hats was required by all persons in the scrapyard and, if Taylor had come to the office on the day in question, which he did not, he would have been offered a hard hat. Baugh testified to his understanding that such policy only applied to employees.

Mims took Taylor home, after which Taylor's fiancé took him to the hospital. There, Taylor was advised he suffered a nonserious head injury and was directed to not work the following day. Prior to this incident, Taylor suffered from "cluster migraines" since he was nineteen years-of-age,[2] which he would get "every day, but [allegedly] not as bad as [he] got them" after being hit in the head

---

[2] Taylor was thirty-five at the time of trial.

with the pole. Prior to the incident at CC, Taylor frequently visited the emergency room for treatment in relation to his migraines. During three separate visits to the emergency room in 2011, Taylor reported to medical staff that he suffered from multiple migraines per day and the pain level of such migraines was "ten out of ten." On one visit, he advised medical staff he experienced five migraines per day, and during a separate visit, he reported he experienced six per day. At a visit to the hospital in February 2013, after the incident, he reported to medical personnel that he experienced "a headache 4–5 times a day."

Taylor presented to a neurologist for an evaluation in December 2015. Taylor reported to the neurologist that he "had prior headaches dating back to age 19—but since the accident, the headaches . . . remarkably increased up to five times a day." Upon examination, this neurologist concluded Taylor suffered from "cluster migraines" which he believed "were definitely aggravated by the injury." Ultimately, the neurologist opined Taylor's migraines amounted to a five percent impairment of the whole person before the injury and a twenty percent impairment of the same after the injury. The neurologist did not review any of Taylor's medical records prior to his injury in November 2012 but instead relied on what Taylor told him about his history with migraines.

Taylor filed a negligence suit against CC in September 2014. Following a trial, a jury returned a verdict in favor of Taylor. The jury unanimously awarded Taylor $4904.52 in past medical expenses, $500.00 in past loss of body function, and $500.00 in past pain and suffering, for a total award of $5904.52.[3] However,

---

[3] The jury did not award Taylor any damages for future loss of body function or pain and suffering.

the jury assigned Taylor with forty-five percent of the fault, and his overall award was accordingly reduced to $3247.49.

CC filed a motion for judgment notwithstanding the verdict and motion to tax costs. In relation to the motion for judgment notwithstanding the verdict, CC requested the court to set aside the award for past medical expenses, generally arguing Taylor had yet to pay any of the medical bills associated with the injury and there was no testimony as to the reasonableness of such expenses.[4] *See Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 156 (Iowa 2004). With regard to the motion to tax costs, CC requested the court assess the court costs against Taylor because CC's prior offer to confess judgment was in excess of Taylor's ultimate award. *See* Iowa Code §§ 677.7, .9, .10.

Taylor moved for a new trial. He argued (1) the jury's verdict was inadequate because the jury improperly found him to be forty-five percent at fault and the jury's awards for past loss of bodily function and past pain and suffering were insufficient in comparison to the injury suffered, (2) his inability to present evidence regarding subsequent remedial measures on the part of CC was prejudicial, and (3) CC's counsel "did not comply with discovery in either a good faith or meaningful manner" by allegedly concealing the whereabouts of a particular witness and encouraging perjury.

---

[4] CC raised this same argument in (1) a pretrial motion in limine aimed at rendering inadmissible any "[m]edical bill evidence without proper foundation to prove the reasonable value of the services rendered," (2) an objection at trial to the admissibility of a medical bill, and (3) oral motions for directed verdicts at the close of each of the parties' case-in-chief. The district court declined to rule on the motion in limine but overruled the evidence objection at trial. The court also denied CC's oral motions for a directed verdict, concluding the issue was for the jury to decide.

The district court denied Taylor's motion for a new trial and CC's motion for judgment notwithstanding the verdict but granted CC's motion to tax costs and ordered the clerk to tax all court costs against Taylor. As noted, both parties appeal.

## II.     Taylor's Motion for a New Trial

Taylor's general contention on appeal is that the district court abused its discretion in denying his motion for a new trial because the jury's award of damages was inadequate. He also argues CC and its counsel engaged in misconduct throughout the proceedings.

"We review the denial of a motion for new trial based on the grounds asserted in the motion." *Rivera v. Woodward Res. Ctr.*, 865 N.W.2d 887, 891 (Iowa 2015). Denials of such motions concerning the adequacy of damages and misconduct of a party are reviewed for an abuse of discretion. *Ort v. Klinger*, 496 N.W.2d 265, 269 (Iowa 1992) (adequacy of damages); *see Burke v. Brimmer*, No. 05-0593, 2009 WL 1676894, at *1 (Iowa Ct. App. June 17, 2009) (misconduct). The adequacy of damages in any given case depends on the facts of the case. *Foggia v. Des Moines Bowl-O-Mat, Inc.*, 543 N.W.2d 889, 891 (Iowa 1996). The test is "whether the verdict fairly and reasonably compensates the injury the party sustained." *Id.* (quoting *Matthess v. State Farm Mut. Auto Ins. Co.*, 521 N.W.2d 699, 702 (Iowa 1994)). Key in this test is whether, "after examining the record, 'giving the jury its right to accept or reject whatever portions of the conflicting evidence it chose, the verdict effects substantial justice between the parties.'" *Id.* (quoting *Kautman v. Mar-Mac Cmty. Sch. Dist.*, 255 N.W.2d 146, 148 (Iowa 1977)). Also important is "the fact the trial court, with

benefit of seeing and hearing witnesses, observing the jury and having before it all incidents of the trial, did not see fit to interfere [with the jury's verdict]." *Id.* (alteration in original) (quoting *Olsen v. Drahos*, 229 N.W.2d 741, 743 (Iowa 1975)).

First, Taylor argues the jury erred in finding him forty-five percent at fault for his injury, contending "[t]here was no credible evidence that there was any policy that invitees had to wear a hard hat while in the yard" nor was there any reason for him "to suspect he was susceptible to being injured." We recognize that the existence of a hard hat policy at the time of the incident was disputed, but "[t]he jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive." *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993). "In fact, the very function of the jury is to sort out the evidence and 'place credibility where it belongs.'" *Id.* (quoting *State v. Blair*, 347 N.W.2d 416, 420 (Iowa 1984)).

Based on the evidence presented, the jury could have rationally concluded that a hard hat policy was in effect at the time of the incident and Taylor failed to report to the office and retrieve a hard hat when he arrived at the scrapyard. The jury could have also rationally concluded that Taylor knew he was susceptible to injury at the time he was injured, especially in light of Taylor's advisement to Baugh that he would be unable to properly lift the pole and Taylor's continued presence in the area. We also reject Taylor's argument that the attempted admission of a photograph taken at the time of trial of a sign at CC's facility referencing a hard hat requirement was prejudicial. The district court ruled the photograph inadmissible, and CC's facility manager specifically testified he had

no knowledge as to whether the sign was posted at the site at the time of Taylor's injury. We conclude the jury's assignment of fault was supported by the evidence and the district court did not abuse its discretion in declining to grant a new trial on this ground.

Next, Taylor argues the jury's combined award of $1000.00 for past loss of bodily function and past pain and suffering were insufficient in comparison to the injury he suffered. The evidence reflects that when Taylor visited the emergency room the day of his injury he was diagnosed with a nonserious head injury and was advised to not work the following day. Also, despite Taylor's repeated assertions that the severity of his migraines increased following his injury, his medical records that predated his injury suggest otherwise. The only testimony supporting a finding that Taylor's migraines worsened was that of the neurologist, which Taylor argues was not contradicted. The neurologist's testimony was, however, clearly contradicted by other evidence. A comparison of Taylor's medical records from 2011, before the injury, with medical records from 2013, after the injury, reveals his migraines did not increase in severity. What is more, the neurologist's opinion did not contemplate the 2011 medical records but was instead wholly based on Taylor's 2013 medical records and what Taylor told him at an examination in 2015, after he had already filed suit. Based on this record, the district court did not abuse its discretion in declining to grant a new trial on the jury's combined award of $1000.00 for past loss of bodily function and past pain and suffering.

Finally, Taylor forwards several allegations of misconduct on the part of CC and its counsel throughout the proceedings. He specifically argues CC

concealed Baugh as a witness for trial advantage and encouraged him to perjure himself at trial. Baugh appeared at trial and testified as a witness for Taylor, largely to the detriment of CC's theory of the case, but the jury obviously found his credibility to be lacking. Because we believe Taylor was not prejudiced by any alleged misconduct, we conclude the district court did not abuse its discretion in denying Taylor's motion for a new trial. *See Rosenberger Enters., Inc. v. Ins. Serv. Corp. of Iowa*, 541 N.W.2d 904, 907 (Iowa Ct. App. 1995) ("A new trial is required for improper conduct by counsel if it appears that prejudice resulted or a different result would have been probable but for any misconduct.").

Finding no abuse of discretion, we affirm the district court's denial of Taylor's motion for a new trial.

## III.    CC's Motion for Judgment Notwithstanding the Verdict

CC argues the jury's award for past medical expenses should be set aside because "evidence of payment or testimony from an expert as to the reasonableness of [Taylor's] medical charges" was not presented at trial. As noted, CC raised this argument several times during the proceedings, but the district court repeatedly rejected it. Taylor argues he did not have the means to pay the bill and not allowing him to admit his past medical expenses into the record on the ground that he did not pay for them would be a violation of Equal Protection. Because the district court's ruling makes clear it did not consider Taylor's Equal Protection claim and Taylor did not file a rule 1.904(2) motion concerning the same, we do not consider the argument. S*ee Meier*, 641 N.W.2d at 537.

"We review a district court's ruling denying a motion for judgment notwithstanding the verdict for correction of errors at law." *Garr v. City of Ottumwa*, 846 N.W.2d 865, 869 (Iowa 2014). The question is "whether sufficient evidence existed to justify submitting the case to the jury at the conclusion of the trial.'" *Id.* (quoting *Lee v. State*, 815 N.W.2d 731, 736 (Iowa 2012)). Submitting the case to the jury is only justified where each element of the plaintiff's claim is supported by substantial evidence. *Id.* The entry of judgment notwithstanding the verdict is appropriate where "the movant was entitled to a directed verdict at the close of all the evidence, and moved therefor." Iowa R. Civ. P. 1.1003(2). "The purpose of the rule is to allow the district court an opportunity to correct any error in failing to direct a verdict." *Easton v. Howard*, 751 N.W.2d 1, 4 (Iowa 2008).

In this case, Taylor had the burden to prove the reasonable value of his past medical expenses. *See Pexa*, 686 N.W.2d at 156. In order to meet this burden, Taylor offered a medical bill for $4904.52. This evidence was admitted over CC's objection on the ground that there was no foundation to show the medical costs were reasonable. Taylor conceded the bill had not been paid at the time of trial, and no witnesses, expert or otherwise, testified that the costs were reasonable. CC subsequently argued in two motions for a directed verdict, both of which were ultimately denied, that Taylor did not meet his burden to prove his past medical expenses were reasonable. The same argument was raised in CC's motion for judgment notwithstanding the verdict.

The Iowa Supreme Court has stated:

> An injured plaintiff may recover only the reasonable and necessary costs of medical care. Therefore, the plaintiff has the burden to prove the reasonable value of the services rendered. The reasonable value of medical services can be shown by evidence of the amount paid for such services or through the testimony of a qualified expert witness. The amount charged, standing alone, is not evidence of the reasonable and fair value of the services rendered. The billed amount is relevant only if that figure was paid or an expert witness has testified to the reasonableness of the charges. . . . [E]vidence of the amount charged will not, in the absence of proof of the reasonableness of the billed sum, support recovery of medical expenses.

*Id.* (citations omitted). Based on this language, we conclude Taylor failed to meet his burden to prove the reasonable value of his past medical expenses. CC was therefore entitled to a directed verdict on the issue of past medical expenses at the close of evidence and, after the jury returned an award, judgment notwithstanding the verdict. *See* Iowa R. Civ. P. 1.1003(2).

We reverse the district court's denial of CC's motion for judgment notwithstanding the verdict and remand for the entry of an order for a directed verdict on the issue of past medical expenses.

## IV. CC's Motion to Tax Costs

Taylor argues his failure to accept CC's offer to confess judgment did not justify shifting the costs of trial to him because CC did not give him proper notice of an offer to confess judgment. Because our analysis of this issue primarily turns on statutory interpretation, our review is for legal error. *See DuTrac Cmty. Credit Union v. Hefel*, 893 N.W.2d 282, 289 (Iowa 2017); *Harris v. Olson*, 558 N.W.2d 408, 409 (Iowa 1997).

On February 26, 2016, CC's counsel sent a letter via electronic mail to Taylor's counsel which included the following: "Please let this letter serve as an

offer to confess judgment pursuant to Iowa Code chapter 677 in the amount of $4,800, which offer includes costs and interest, if any." Taylor's counsel responded three days later: "Your offer is rejected."

Iowa Code section 677.7 provides:

> The defendant in an action for the recovery of money only may, at any time after service of notice and before the trial, *serve* upon the plaintiff or the plaintiff's attorney an offer in writing to allow judgment to be taken against the defendant for a specified sum with costs.

(Emphasis added.) If the offer is not accepted and "the plaintiff fails to obtain judgment for more than was offered by the defendant, the plaintiff cannot recover costs, but shall pay the defendant's costs from the time of the offer." Iowa Code § 677.10.

Taylor generally argues because the letter was not "served" upon his counsel, he was not given proper notice of the offer to confess judgment. CC argues formal service was not required and, in any event, Taylor's attorney's rejection of the offer reveals that the offer was received and considered.

Iowa Code chapter 677 does not explicitly define what the term "serve" means for purposes of section 677.7. Section 677.7 identifies the proper person to be served as either "the plaintiff or the plaintiff's attorney." Generally, "[s]ervice upon a party represented by an attorney shall be made upon the attorney." Iowa R. Civ. P. 1.442(2). Rule 1.422(2) further provides for service by electronic mail if the party consents in writing to be served in that manner. Although our record does not reveal such a formal consent, our record is clear Taylor's counsel received the offer to confess in an email correspondence; and Taylor's counsel expressly responded by email to CC's offer to confess judgment

and rejected it within the time frame contemplated by Iowa Code section 677.8. At the time of the offer and rejection, he made no objection to the procedure or manner of service. Without deciding whether Iowa Code section 677.7 requires other formalities, under the facts of this case we are convinced "[t]he essentials of due process [were] satisfied" because the notice came to Taylor's attention and gave him an opportunity to respond, after which he actually did respond. *See Hron v. Ryan*, 164 N.W.2d 815, 819 (Iowa 1969).

Taylor challenges the district court's assessment of all of the court costs to him, rather than only those incurred from the time of the offer. *See* Iowa Code § 677.10*.* We agree with Taylor that the district court was limited to assessing him with the court costs incurred from the time of the offer. *See Weaver Const. Co. v. Heitland*, 348 N.W.2d 230, 232 (Iowa 1984) (affirming district court order requiring defendant to pay costs incurred prior to offer to confess judgment and concluding, where the plaintiff's award does not exceed the offer to confess judgment, he or she is only responsible for "those costs that are incurred after the time of the offer"). As such, we reverse the portion of the order that assesses all court costs to Taylor and remand this matter to the district court for the entry of an order that assesses to CC all court costs incurred up to the date of the offer to confess judgment and to Taylor all court costs incurred after the same.

**V.      Conclusion**

We affirm the district court's denial of Taylor's motion for a new trial. We reverse the portion of the order that assesses all costs to Taylor and remand this matter to the district court for the entry of an order that assesses to CC all court costs incurred up to the date of the offer to confess judgment and to Taylor all

court costs incurred after the same.  We reverse the district court's denial of CC's motion for judgment notwithstanding the verdict and remand for the entry of an order for a directed verdict on the issue of past medical expenses.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED ON APPEAL; REVERSED AND REMANDED ON CROSS APPEAL.**