Timothy Lee WOLF, Appellee,

v.

Joan Lynn WOLF, Appellant.

No. 02–1292.

Supreme Court of Iowa.

Jan. 7, 2005.

G. Brian Weiler, Davenport, for appellant.

Arthur L. Buzzell, Davenport, for appellee.

LARSON, Justice.

The Scott County District Court, in reliance on *Wood v. Wood,* 338 N.W.2d 123 (Iowa 1983), awarded this plaintiff-father actual and punitive damages for the defendant's tortious interference with the plaintiff's custody[1] rights in the parties' daughter, Ashley. We affirm in part, reverse in part, and remand.

## I. *Facts and Prior Proceedings.*

Timothy Wolf and his former wife, Joan, have been embroiled in a bitter tug-of-war in Arizona and Iowa courts over the physical care of Ashley. Ashley, born in 1985, is now an adult, but the battle continues.

The parties divorced in 1990, and the court awarded sole legal custody and primary physical care to Joan. In 1993 the court modified the decree by granting the parties joint legal custody and primary physical care to Timothy. In 1998 the district court modified the decree, retaining joint legal custody but granting primary physical care to Joan. Timothy appealed, and the court of appeals reversed, reaffirming physical care in Timothy. By this time, Ashley had moved to Arizona with Joan, and Joan petitioned an Arizona court to award her primary care. The Arizona court refused.

In August 2000, eleven months after the court of appeals ordered that physical care be returned to Timothy, Ashley was still not returned to Iowa. Timothy obtained a writ of habeas corpus in Iowa and went to Arizona to retrieve Ashley. He brought her back to Iowa, and she lived with him for approximately a month and a half. However, on October 8, 2000, when Ashley was fifteen, she left Timothy's home and flew to Arizona. On November 8, 2000, Joan petitioned an Arizona court to award her temporary physical custody, but the Arizona court refused, ruling that Iowa retained jurisdiction.

On November 14, 2000, Joan filed a petition in Iowa to modify the decree, and she and Ashley came to Iowa to testify. During that trial, the court, concerned that Joan might flee the jurisdiction with Ashley, stated:

> I will issue an order that all parties are to remain in the State of Iowa, and will be personally present for the remainder of these proceedings.

During the modification proceedings, the court entered a show-cause order in con-

---

1. We use the word "custody" in its limited sense of "primary physical care" under Iowa Code sections 598.1(7) and 598.41(5) (2001).

nection with Joan's failure to abide by the earlier court order to return Ashley to Iowa. The court set the show-cause hearing for three days later. This colloquy followed:

> THE COURT: I would like the record to reflect that the [show-cause] order is being handed through counsel to the Respondent, and also I wish to state on the record that the Respondent understands that it is further an order—an interim order of the Court that the Respondent shall remain in the State of Iowa pending the hearing on the contempt action.

> Do you understand that, Ms. Wolf?

> MS. WOLF: Yes, I do.

> THE COURT: Do I have your word that you will remain here in the State of Iowa until this matter is heard?

> MS. WOLF: Yes.

Joan did not stay in Iowa as promised, but immediately left for Arizona with Ashley. In an order of December 27, 2000, the district court denied Joan's modification petition and confirmed Timothy's right to custody.

In May 2002 Timothy filed this suit for damages, based on the *Wood* case and Restatement (Second) of Torts section 700 (1977). At the trial, Timothy introduced the evidence outlined above, and the court took judicial notice of the court files in the prior cases between the parties. Joan did not appear for the hearing and produced no evidence. Her lawyer, however, appeared for her and moved to dismiss the suit for failure to establish a prima facie case of tortious interference. The court denied the motion.

In *Wood* we recognized the tort claim of intentional interference with custody and stated the rule:

> "One who, with knowledge that the parent does not consent, abducts or otherwise compels or induces a minor child to leave a parent legally entitled to its custody or not to return to the parent after it has been left him, is subject to liability to the parent."

338 N.W.2d at 124 (quoting Restatement (Second) of Torts § 700). A similar cause of action is now codified at Iowa Code section 710.9 (2001), although this was not a basis for the trial court's ruling and, in fact, was not raised at trial or on appeal until oral arguments.[2]

Despite a vigorous dissent in *Wood* raising several "slippery slope" arguments, *see* 338 N.W.2d at 127–30 (Wolle, J., dissenting), we adopted the cause of action for several reasons: (1) similar claims had already been recognized at common law, *id.* at 124; (2) several other jurisdictions had recognized the claim, *id.* at 124–25; and (3) "the tort claim can, more effectively than any of the alternative sanctions [such as the Uniform Child Custody Jurisdiction Act, kidnapping prosecution, and contempt], serve both to prevent child-snatching and to pick up the pieces if it does occur," *id.* at 126–27. The prediction in the *Wood* dissent that a flood of intrafami-

---

2. Section 710.9 provides:

A parent, guardian, or custodian of a runaway child has a right of action against a person who harbored the runaway child in violation of section 710.8 for expenses sustained in the search for the child, for damages sustained due to physical or emotional distress due to the absence of the child, and for punitive damages.

Iowa Code section 710.8(1)(*c*) defines "runaway child" as "a person under eighteen years of age who is voluntarily absent from the person's home without the consent of the person's parent, guardian, or custodian."

ly litigation would ensue has not been borne out. In fact, only one case involving the *Wood* cause of action, *Lansky v. Lansky,* 449 N.W.2d 367 (Iowa 1989), has reached this court in the twenty-one years since *Wood.* In *Lansky* we reaffirmed the holding of *Wood. See Lansky,* 449 N.W.2d at 368.

To establish a claim of tortious interference with custody, a plaintiff must show (1) the plaintiff has a legal right to establish or maintain a parental or custodial relationship with his or her minor child; (2) the defendant took some action or affirmative effort to abduct the child or to compel or induce the child to leave the plaintiff's custody; (3) the abducting, compelling, or inducing was willful; and (4) the abducting, compelling, or inducing was done with notice or knowledge that the child had a parent whose rights were thereby invaded and who did not consent. *See* 67A C.J.S. *Parent and Child* § 322, at 409 (2002).

## II. *The Issues.*

The defendant argues: (1) the plaintiff's evidence is insufficient to establish a prima facie case of tortious interference, specifically with respect to any active conduct to entice Ashley away from her father; (2) there was insufficient evidence of willful and wanton conduct to support a claim for punitive damages; (3) the punitive damages award was excessive; and (4) the court erred in awarding attorney fees to Timothy.

The defendant's appeal brief also argues that Timothy could not sue for intentional interference because the parties have joint legal custody. *See* Restatement (Second) of Torts § 700 cmt. c ("When the parents are by law jointly entitled to the custody and earnings of the child, no action can be brought against one of the parents who abducts or induces the child to leave the other."). The defendant did not raise this argument in the district court, and she now concedes that Timothy has superior custody rights for purposes of this case. In any event, we hold that "primary physical care" under Iowa Code sections 598.1(7) and 598.41(5) is a sufficient basis for maintaining the cause of action, even if the parties have "joint legal custody" under Iowa Code sections 598.1(3) and 598.41(2), (4). To be consistent with the wording of the Restatement, we use "custody" in this case to refer to primary physical care.

## III. *Principles of Review.*

In a law action tried to the court, our review is for the correction of errors at law, and the district court's findings of fact are binding on us if they are supported by substantial evidence. *Hendricks v. Great Plains Supply Co.,* 609 N.W.2d 486, 490 (Iowa 2000); *Grinnell Mut. Reins. Co. v. Voeltz,* 431 N.W.2d 783, 785 (Iowa 1988). "Evidence is substantial if reasonable minds would accept it as adequate to reach a conclusion." *Schlegel v. Ottumwa Courier,* 585 N.W.2d 217, 221 (Iowa 1998).

## IV. *The Court's Findings of Fact.*

The district court found that Joan knew Ashley's father did not consent to her being in Joan's custody. The court further found that Joan induced Ashley to leave her father and not return as ordered by the court. The court based its inducement finding, in part, on testimony that, while Ashley was living with Timothy for a brief time in 2000, Joan sent an airline ticket, credit card, and a cell phone battery through a friend of Ashley to facilitate her

leaving Iowa. She also fled with Ashley during a prior court proceeding in Iowa.

Joan did not attend the hearing on Timothy's tort suit, presumably because she was under the contempt show-cause order in Iowa. However, her lawyer appeared and argued that her client was unable to force Ashley to return to Iowa and that Joan merely provided shelter for her. The court rejected the lawyer's argument, saying "I want to hear evidence. I don't want to hear it through argument." In any event, this "fact" adduced by Joan's lawyer is belied by the record. When it was in Joan's interest to have Ashley testify in support of Joan's modification petition, she seemed to have no trouble getting Ashley back to Iowa. Also, by furnishing Ashley with the credit card and related items to facilitate her flight to Arizona, Joan went beyond merely providing shelter. The plaintiff's evidence, which was uncontroverted, is substantial and supports the court's finding that Joan induced Ashley to avoid returning to Iowa.

### V. *Punitive–Damage Award.*

■ A. *Are punitive damages recoverable in this case?* In *Wood* we recognized a plaintiff's right to punitive damages in tortious-interference cases and noted the public policy considerations underlying that right. *Wood,* 338 N.W.2d at 127 ("potential punitive damages will serve as an additional deterrent"); *cf. Westway Trading Corp. v. River Terminal Corp.,* 314 N.W.2d 398, 404 (Iowa 1982) (allowing punitive damages for tortious interference with contractual relationship). *See generally* 67A C.J.S. *Parent and Child* § 325, at 411 (noting that "it has been held that punitive damages may be recovered for the wrong done, under aggravating circumstances, to the parent in his or her

affections and feelings"); William B. Johnson, Annotation, *Liability of Legal or Natural Parent, or One Who Aids and Abets, for Damages Resulting From Abduction of Own Child,* 49 A.L.R.4th 7, 46–49 (1986). Also, the legislature has put its stamp of approval on punitive damages in similar cases in Iowa Code section 710.9. We reaffirm the holding in *Wood* that punitive damages may be recovered.

■ B. *Merits.* We review an award of punitive damages for correction of errors at law. *Jones v. Lake Park Care Ctr., Inc.,* 569 N.W.2d 369, 378 (Iowa 1997). Punitive damages are only appropriate when a tort is committed with "either actual or legal malice." *Id.* "Actual malice may be shown by such things as personal spite, hatred, or ill-will and legal malice may be shown by wrongful conduct committed with a willful or reckless disregard for the rights of another." *Id.* Under Iowa Code section 668A.1(1)(*a*), the plaintiff must show "by a preponderance of clear, convincing, and satisfactory evidence" that the defendant's conduct "constituted willful and wanton disregard for the rights or safety of another." "Thus, merely objectionable conduct is insufficient.... To receive punitive damages, plaintiff must offer evidence of defendant's persistent course of conduct to show that the defendant acted with no care and with disregard to the consequences of those acts." *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co.,* 510 N.W.2d 153, 156 (Iowa 1993) (citation omitted).

■ We reject Joan's argument that she was only acting as a good mother by providing Ashley with a protective environment. The court found affirmative acts by her, as outlined above, that demonstrated willful and wanton conduct. Joan kept

Ashley for nearly three years after Timothy was awarded physical care. During the short period Timothy did have physical care, Joan provided Ashley with the means to run away—showing a disregard for Timothy's custodial rights and the emotional harm he would likely suffer. When Joan returned to Iowa to seek a modification of physical placement, she disobeyed direct orders from the judge and took Ashley back to Arizona before the proceeding ended. She thereby showed not only a lack of concern for Timothy's custodial rights, but also displayed a complete disregard for the Iowa legal system. In fact, she has defied Iowa court orders for three years. We believe that clear, convincing, and satisfactory evidence supports the district court's finding of willful and wanton conduct warranting punitive damages.

■ C. *Was the punitive-damage award excessive?* Joan argues that the amount of punitive damages—$25,000—violates the Due Process Clause of the Fourteenth Amendment because it is "grossly excessive." Appellate review for excessiveness is de novo. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418, 123 S.Ct. 1513, 1520, 155 L.Ed.2d 585, 601 (2003).

■ The Supreme Court has stated that an appellate court reviewing a punitive-damage award for excessiveness should consider three "guideposts." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574–75, 116 S.Ct. 1589, 1598, 134 L.Ed.2d 809, 826 (1996); *accord Campbell*, 538 U.S. at 418, 123 S.Ct. at 1520, 155 L.Ed.2d at 601. These guideposts are:

(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm

suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the [trier of fact] and the civil penalties authorized or imposed in comparable cases.

*Campbell*, 538 U.S. at 418, 123 S.Ct. at 1520, 155 L.Ed.2d at 601.

■ 1. *Degree of reprehensibility.* The degree of reprehensibility of the defendant's conduct is said to be the most important indicium of the reasonableness of a punitive-damage award. *Gore*, 517 U.S. at 575, 116 S.Ct. at 1599, 134 L.Ed.2d at 826. The Court has said that a number of factors should be considered in determining the reprehensibility of the defendant's conduct:

[1] [T]he harm caused was physical as opposed to economic; [2] the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; ... [3] the conduct involved repeated actions or was an isolated incident; and [4] the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Campbell*, 538 U.S. at 419, 123 S.Ct. at 1521, 155 L.Ed.2d at 602. The Court also said that

[t]he existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect.

*Id.* (citing *Gore*, 517 U.S. at 575, 116 S.Ct. at 1599, 134 L.Ed.2d at 826).

■ On our de novo review of the record as set out above, we find all of these factors were established in the evidence. Timothy suffered both emotional and economic damage; Joan showed indifference

to his emotional condition; her actions were repeated—not only toward Timothy's legal rights under court orders—but toward the courts themselves; and harm was the result of intentional malice, trickery, or deceit and not the result of mere accident.

2. *Disparity between actual or potential harm and the punitive-damage award.* Joan's argument emphasizes the disparity between the district court's actual-damage award (one dollar) and its punitive-damage award ($25,000). In this case, Timothy specifically asked for only one dollar to remove any appearance to Ashley that he was motivated by money. His actual damages award is therefore not an accurate indicator of the actual harm caused by the defendant.

We note that the Supreme Court has been "reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award." *Campbell,* 538 U.S. at 424, 123 S.Ct. at 1524, 155 L.Ed.2d at 605. Part of the reason for this is that mathematical formulae are impractical in cases such as this in which the underlying award is one of nominal damages. *Gore,* 517 U.S. at 582, 116 S.Ct. at 1602, 134 L.Ed.2d at 830–31 ("[W]e have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, even one that compares actual *and potential* damages to the punitive award."). In those cases, the Supreme Court has said

> low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the

injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine. It is appropriate, therefore, to reiterate our rejection of a categorical approach.

*Id.* at 582, 116 S.Ct. at 1602, 134 L.Ed.2d at 831.

> In sum, courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of *harm* to the plaintiff *and to the general damages recovered.*

*Campbell,* 538 U.S. at 426, 123 S.Ct. at 1524, 155 L.Ed.2d at 606 (emphasis added). As is apparent from this language, "harm" does not necessarily equate with "damages."

As the eighth circuit has observed,

> [t]o apply the proportionality rule to a nominal damages award would invalidate most punitive damages awards because only very low punitive damages awards could be said to bear a reasonable relationship to the amount of a nominal damages award. Consequently, in those cases where the trial court has awarded nominal damages and punitive damages, we rely and give great deference to the trial court's discretion as to the amount of the punitive damages award it has permitted to stand.

*Edwards v. Jewish Hosp. of St. Louis,* 855 F.2d 1345, 1352 (8th Cir.1988).

 In this case, the harm done to the plaintiff clearly exceeded the amount of compensatory damages awarded because the plaintiff waived all amounts over one dollar. Although the amount of compensatory damages awarded was nominal, the actual harm to the plaintiff was substantial. We need not attempt to quantify the potential damages that could have been

allowed here. Suffice it to say that the deprivation of a parent's relationship with a child, over several years, with the attendant costs such as attorney fees spawned by the defendant's contumacious conduct are sufficient potential damages to make the award of $25,000 in punitive damages well within constitutional parameters.

■ 3. *Comparing the punitive-damage award to civil or criminal penalties authorized in comparable cases.* Another guideline to consider is the disparity between the punitive-damage award and the civil or criminal penalties authorized or imposed in comparable cases. *Gore,* 517 U.S. at 583–84, 116 S.Ct. at 1603, 134 L.Ed.2d at 831; *see also Pac. Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 23, 111 S.Ct. 1032, 1046, 113 L.Ed.2d 1, 23 (1991). Comparing the plaintiff's punitive-damage award to other penalties provided by law, we note that, while a contempt citation is aimed at an affront to the court and not directly to the plaintiff, the Iowa legislature has provided for a jail term of up to thirty days for violation of a custody decree. *See* Iowa Code § 598.23. From a policy standpoint, it is doubtful this defendant will venture into Iowa with the contempt order hanging over her head. Nevertheless, the punitive-damage award, which may follow her to Arizona, will provide some of the punitive and deterrent effects that underlie our recognition of this tort claim. *See Wood,* 338 N.W.2d at 127.

■ After considering the three *Gore* guideposts, we conclude the district court's punitive-damage award was not "grossly excessive" and, therefore, did not violate Joan's due process rights.

**VI. *Attorney Fees.***

■ A. *Standard of review.* The standard of review for an award of com-

mon-law attorney fees is de novo. *Hockenberg Equip. Co.,* 510 N.W.2d at 158.

■ B. *Merits.* A plaintiff seeking common-law attorney fees must prove that the culpability of the defendant's conduct exceeds the punitive-damage standard, which requires "willful and wanton disregard for the rights of another." *Id.* at 159. Instead, "such conduct must rise to the level of oppression or connivance to harass or injure another." *Id.* at 159–60. Put another way, the standard "envisions conduct that is intentional and likely to be aggravated by cruel and tyrannical motives." *Id.* at 159.

■ Although the defendant's conduct in this case was clearly willful and demonstrated a wanton disregard for Timothy's rights, we do not believe the evidence meets the heightened standard of oppression or connivance under the *Hockenberg* test. Accordingly, we reverse on this issue and remand for entry of a corrected judgment, excluding attorney fees.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.**