# IN THE COURT OF APPEALS OF IOWA

No. 13-1634
Filed January 28, 2015

**CHARLES E. LAKIN, III, CHARLES E.
LAKIN, KENNETH R. LAKIN and THE
CHARLES E. LAKIN REVOCABLE TRUST,
CHARLES E. LAKIN, Trustee,**
    Plaintiffs-Appellants/Cross-Appellees,

**vs.**

**RICHARDS FARM LTD, E. JEFFREY
RICHARDS and CHRISTOPHER S.
RICHARDS,**
    Defendants-Appellees/Cross-Appellants.
_____

Appeal from the Iowa District Court for Mills County, James S. Heckerman, Judge.

Charles Lakin appeals the denial of his motion for judgment notwithstanding the verdict, and claims there was insufficient evidence to submit the claim of interference with prospective contractual relationships to the jury, and the punitive damage award violated his due process rights. Jeffrey Richards cross-appeals claiming the court should not have allowed a jury to determine the amount of attorney fees owed Lakin. **AFFIRMED ON BOTH APPEALS.**

David L. Brown of Hansen, McClintock & Riley, Des Moines, and Brett Ryan of Watson & Ryan, P.L.C., Council Bluffs, for appellants.

William R. Hughes Jr. and Robert M. Livingston of Stuart Tinley Law Firm, L.L.P., Council Bluffs, for appellees.

Heard by Mullins, P.J., and Bower and McDonald, JJ.

**BOWER, J.**

Charles Lakin appeals the district court's denial of his motion for judgment notwithstanding the verdict. The case was tried before a jury, which found in favor of Lakin on his breach-of-contract claim in the amount of $319,951, and for Jeffrey Richards on his counterclaim for interference with prospective contractual relationships in the amount of $353,465 and awarded punitive damages to Richards in the amount of $1.4 million. On appeal, Lakin argues there was insufficient evidence to submit the interference with prospective contractual relationships claim to the jury, and the award of punitive damages was improper for three reasons: insufficiency of the evidence, vague jury instructions, and the award violated his due process rights because it was excessive. Richards claims Lakin failed to preserve error on his claims, except the due process claim. Richards cross-appeals claiming the district court erred in submitting the determination of Lakin's attorney fees to the jury.

We find Lakin failed to preserve error on his claims. We find Richards failed to preserve error on his counterclaim. We limit our review to Lakin's claim his due process rights were violated by the excessive punitive damage award and find Lakin's due process rights were not violated and affirm the district court.

## I. BACKGROUND FACTS AND PROCEEDINGS

This appeal stems from a business dispute between Charles E. Lakin, a real estate developer, and E. Jeffrey Richards, a farmer. The dispute involves Richards's leasing farmland from two separate entities: Lakin and the Emerson Cemetery Association (Emerson). In 1996 or 1997, Lakin quitclaimed farmland

to Emerson to use the money gained from renting the farmland to provide maintenance for the cemetery. Members of Lakin's family were buried in the cemetery and he planned on being buried there too. Richards began renting the farmland shortly after Emerson gained possession of the land. Richards and the Emerson Cemetery Association met annually to discuss and set the rental rate for the upcoming crop year.

In 2008, Richards entered into an agreement to lease four tracts of farmland owned by Lakin for the 2008 and 2009 crop years. The Richards family had a history of leasing land from Lakin dating back to Richards's father Paul. The terms of the 2008 and 2009 leases required Richards to pay $285 an acre for certain farmland, and $295 an acre for other farmland. Richards paid his obligation for 2008 in full.

After the 2008 harvest, Richards contacted Lakin asking to renegotiate the terms of the agreement seeking a reduction in the rental amount. Richards wanted a lower rental rate since he had lost money on the land in 2008. Lakin presented Richards with two options: A fifty dollar reduction in rental price per acre, or a sliding scale reduction at Lakin's discretion after the crops had been harvested. The parties failed to reach an agreement on the reduction in rental price and the contract remained unchanged for 2009. Richards farmed the land in 2009, but did not pay the full amount due at the end of the lease term; instead he submitted a partial payment of $225 per acre, or $476,576.75. Lakin claimed Richards actually owed $634,545.50.

In 2010, Lakin began attempting to recover the past due balance from Richards. Lakin's agent, Thomas Pribil, sent Richards a letter on July 8, 2010, generally discussing the dispute. The letter ended by advising Richards to "reconsider your position because both legally and with respect to your standing in the community and with your other landlords, you are in a can't win situation so govern your actions accordingly." At trial, Pribil characterized the letter as one containing friendly advice, since once a person in a small community is sued for unpaid rents it makes others cautious. In August, the parties, including Richards's son Christopher, met in person. At that meeting, Lakin generally referred to the Richards as "liars," "cheats" or "thieves." In the fall, Lakin improperly filed landlord's liens for any crops grown on Lakin's property in 2009. The liens were removed once Richards's attorney notified Lakin the 2009 grain had already been marketed. The liens caused confusion at the elevators and delayed payment to Richards. Richards's claimed the liens caused damage to his reputation and required him to undertake additional efforts to have the liens removed.

On September 15, 2010, Lakin sent a letter to Emerson. In the letter, Lakin reminded Emerson he had donated the farmland they were currently leasing to Richards. Lakin expressed his disapproval Emerson was renting the gifted land for what he perceived to be "below market rents and not maximizing the income from the farm for the Association." Lakin noted that members of his family were buried in the cemetery and therefore he had a continuing interest in Emerson's operations. He proposed Emerson rent to a different farmer, one he

selected, for a higher rate than Richards was paying.  At the end of the letter, Lakin stated:

> In addition, as I am sure most or all of you know, your present tenant still owes me substantial cash rents from 2009 which is just one of the many reasons why I am no longer renting any of my farms to him.  2009 was the second year of a two year lease and both years were at the same per acre rents.  Oh, how I truly wish Paul Richards was still with us.

Prior to 2010, Emerson and Richards met annually and negotiated a rental price per acre for the upcoming crop year.  Both Richards and Emerson agreed the rent paid by Richards was to be at market rate.  After the 2010 Lakin letter, Emerson decided to put the property lease rights up for auction.  Richards was the highest bidder in 2011 and 2012, but lost the right to rent the property in 2013 to an unrelated third party.  Pribil attended the 2011 auction and mentioned to Emerson Lakin's concerns about renting to Richards.  Pribil also stated Richards had retained an attorney who specialized in bankruptcy.

On October 22, 2010, Lakin filed a petition in Mills County alleging Richards breached the farm lease contract and promissory note.  Lakin claimed Richards owed him $157,968.75, and, pursuant to the leases and promissory notes, twelve percent interest, a late payment charge of ten percent, costs of collection, and attorney fees.  Richards responded by filing an answer and counterclaim.  Richards refuted the substantive aspects of the Lakin's claim, and asserted counterclaims for interference with current/past business relationships, interference with prospective business relations, abuse of process, defamation, slander, and libel.  Richards also sought punitive damages.

A jury trial was held in July 2013. The court dismissed Richards's counterclaims for defamation, interference with ongoing contractual relationship, and all the interference with prospective contractual relationships except the Emerson Cemetery contract. Lakin also sought to introduce evidence of the attorney fees owed based on language in the promissory note allowing Lakin to recover attorney fees "should suit be brought to recover on this Note . . . ."

After two days of trial the parties rested and Lakin orally moved for a directed verdict on Richards's claims for abuse of process, interference with existing contract/business relations (for all of the farm leases), and abuse of process. The court partially granted the motion concerning the interference claim, but narrowed the claim to only the dealings with Emerson. The court also narrowed the abuse of process claim to only the actual costs incurred from the delay caused by Lakin filing the liens. Finally, the court limited the defamation claims to the statements contained in the letter from Lakin to Emerson, and the statements made by Lakin's agent at the Emerson meeting.

The jury deliberated for four hours before reaching a verdict. The jury awarded Lakin $319,951 on the breach of contract claim. The jury awarded Richards $353,465 on his counterclaim for interference with prospective business relations[1] between Richards and Emerson. The jury found for Richards on the

---

[1] Lakin refers to this issue as "interference with prospective *contractual* relationships." Richards refers to the issue as "interference with prospective *business* relations." Jury Instructions numbers 21–24 treat the terms "business" and "contractual" interchangeably. Jury Verdict Form number 2 uses the term "business" rather than "contractual." For the purposes of this appeal, and to resolve any ambiguity, we refer to this issue as "interference with prospective contractual relationships."

abuse of process claim, but awarded no damages. Finally, the jury awarded Richards $1.4 million in punitive damages.

Lakin moved for judgment notwithstanding the verdict (JNOV) and Richards resisted. The court overruled Lakin's motions and this appeal followed. On appeal, Lakin argues there was insufficient evidence to submit the interference claim to the jury, and the award of punitive damages was improper for three reasons: insufficiency of the evidence, vague jury instructions, and it violated his due process rights. Richards refutes Lakin's claims, and cross-appeals claiming the district court erred in submitting the determination of Lakin's attorney fees to the jury.

## II. ERROR PRESERVATION

Richards's claims Lakin failed to preserve error on his interference with prospective contractual relationships claim, and his claims concerning punitive damages. Lakin claims Richards did not preserve error on the determination of attorney fees. We will discuss each preservation issue in turn below.

Error preservation rules exist to provide district courts an opportunity to avoid or correct errors and to provide a record for appellate courts. *Veatch v. Bartels Lutheran Home*, 804 N.W.2d 530, 533 (Iowa Ct. App. 2011). A party ordinarily must raise an issue and the district court must rule on that issue to ensure preservation for appellate review. *Duck Creek Tire Serv., Inc. v. Goodyear Corners, L.C.*, 796 N.W.2d 886, 892 (Iowa 2011). The issue raised at trial must have been "sufficiently definite to have alerted the trial court to the error claimed so as to have given the court a chance to correct it." *Grefe & Sidney v.*

*Watters*, 525 N.W.2d 821, 825 (Iowa 1994). "If the court's ruling indicates that the court considered the issue and necessarily ruled on it, even if the court's reasoning is 'incomplete or sparse,' the issue has been preserved." *Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012) (citation omitted). "The claim or issue raised does not actually need to be used as the basis for the decision to be preserved, but the record must at least reveal the court was aware of the claim or issue and litigated it." *Meier v. Senecaut*, 641 N.W.2d 532, 540 (Iowa 2002) (citations omitted).

At the close of the trial, Lakin's attorney orally moved for a directed verdict and stated:

> Counsel: At this point the counterclaim defendants would make a motion for directed verdict on the counterclaim of interference with contract in terms of all the farm leases. One of the requirements of an interference with contract claim is that there be an existing contract. It's not in dispute that each and every farm—farm lease was terminated and terminated properly. As such there wouldn't be a contract to interfere with for the following year.
> Further, I would make a motion for directed verdict on the claim of abuse of process and interference with business relationships—check that—the claim of abuse of process because the counterclaim plaintiffs have failed to present any evidence of damages that resulted from the abuse of process claim.
> The Court: That's the extent of your motion?
> Counsel: That's it.

The court ruled on the motion and held: "With respect to the interference, I'll sustain the motion as it relates to any contracts other than the cemetery association contract." The court partially sustained the abuse of process motion, but limited it to the actual costs associated with removing the liens.

In his motion for directed verdict, Lakin stated one of the requirements of interference with a contract claim is a pre-existing contract. This statement

would be sufficient to preserve an interference with existing contract claim. *See Nesler v. Fisher & Co.*, 452 N.W.2d 191, 198 (Iowa 1990) (defining intentional interference with an existing contract). The difficulty, however, is the issue of interference with existing contractual relationship is not on appeal. Rather, interference with prospective contractual/business relationship is the issue on appeal. A pre-existing contract is not a requirement of interference with prospective contractual relationship. *See id.* at 198–99 (defining interference with prospective contractual relationship). The record shows the district court understood Lakin's motion for directed verdict to be referencing Richards's interference with any existing contract claim, since the court specifically sustained the motion as it related to all contracts except the contract between Emerson and Richards. The court used language evidencing it understood Lakin's motion as addressing only current—not prospective—contracts. Relying on our error preservation principles, we find Lakin failed to preserve the issue of interference with prospective contractual relationship.

On appeal, Lakin raises three issues regarding the punitive damage award. Richards claims Lakin cannot challenge the punitive damages award based on vague jury instructions or sufficiency of the evidence because he did not preserve error on those issues. The jury instructions were reviewed at trial and Lakin did not object. The first instance where Lakin objected to the punitive damages award was in his motion for judgment notwithstanding the verdict. "A motion for judgment notwithstanding the verdict must stand on grounds raised in the directed verdict motion." *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786

N.W.2d 839, 845 (Iowa 2010). "On appeal from such judgment, review by an appellate court is limited to those grounds raised in the directed verdict motion." *Id.* Accordingly, we find Lakin did not preserve error on challenging the jury instructions or the sufficiency of the evidence for the punitive damages award.

In sum, the only issue raised by Lakin not eliminated by our principles of error preservation is his claim the jury's award of punitive damages was excessive and violated his constitutional due process rights. Even if Lakin had preserved error on his arguments, the district court did not commit legal error by denying his motion for directed verdict. *See Anderson v. State*, 692 N.W.2d 360, 363 (Iowa 2005). Viewing the evidence in the light most favorable to Richards, and taking into consideration all the reasonable inferences that could have been made by the jury, substantial evidence in the record supports the district court's denial of Lakin's motion. *See Felderman v. City of Maquoketa*, 731 N.W.2d 676, 678 (Iowa 2007).

Finally, Lakin claims Richards did not preserve error on Richards's cross-appeal concerning the court's decision to submit the calculation of attorney's fees to the jury. At trial, when Lakin presented an exhibit listing the attorney fees, Richards objected. Richards objected to the organization of the attorney fees in the exhibit, specifically because it did not "breakdown the distinction between the work performed for the defense of the counterclaim as well as work related to the matters included the filing of the liens, clearing up of the liens, further items and also other matters as related to motions to dismiss . . . ." Richards did not object to the submission of Lakin's attorney fees to the jury. Since Richards did not

raise this issue at trial and the trial court did not rule on the issue, Richards failed to preserve this issue for appeal.

## III. STANDARD OF REVIEW

"We review an award of punitive damages for correction of errors at law." *Wolf v. Wolf*, 690 N.W.2d 887, 893 (Iowa 2005). However, "[a]ppellate review for excessiveness [of the punitive damages award] is de novo." *Id.* at 894.

## IV. ANALYSIS

Lakin argues the punitive damage award of $1.4 million was excessive and should be set aside because it violated his due process rights under the United States Constitution and the Iowa Constitution due to the non-reprehensibility of the conduct and the relationship between the punitive damages and actual harm to Richards. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003). Richards responds the jury's punitive damage award is constitutionally warranted and should be upheld.

Punitive damages may only be awarded when the plaintiff has shown "by a preponderance of clear, convincing, and satisfactory evidence, the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another." Iowa Code § 668A.1(1)(a) (2013). "Willful and wanton conduct is shown when an actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and . . . usually accompanied by a conscious indifference to the consequences." *Cawthorn v. Catholic Health Initiatives Iowa Corp.*, 743 N.W.2d 525, 529 (Iowa 2007) (internal

quotation marks omitted). Merely objectionable conduct is insufficient. *See Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co. of Des Moines*, 510 N.W.2d 153, 156 (Iowa 1993).

In reviewing the jury's punitive damage award for excessiveness, we consider "three guideposts." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574–75 (1996). We evaluate: (1) the degree of reprehensibility of the defendant's misconduct, (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *State Farm*, 538 U.S. at 416; *Wolf v. Wolf*, 690 N.W.2d 887, 893 (Iowa 2005). The degree of reprehensibility of the actor's conduct is the most important indicium of the reasonableness of a punitive damages award because the damages imposed "should reflect the enormity of [the] offense." *BMW*, 517 U.S. at 575. Lakin takes issue with guideposts one and two, and we address each.

A number of factors are considered in determining the reprehensibility of Lakin's conduct: whether (1) "the harm caused was physical as opposed to economic;" (2) "the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others;" (3) "the target of the conduct had financial vulnerability;" (4) "the conduct involved repeated actions or was an isolated incident;" and (5) "the harm was the result of intentional malice, trickery, or deceit, or mere accident." *Campbell,* 538 U.S. at 419. "The existence of any one of these factors weighing in favor of [Richards] may not be sufficient to

sustain a punitive damages award; and the absence of all of them renders the award suspect." *Id.*

Applying these factors in our de novo review of the instant case, we determine the reprehensibility of Lakin's conduct. The record, as set out above, reveals multiple instances where Lakin engaged in questionable acts, including: The demand letter sent by Pribil containing veiled threats, Lakin's improper filing of the landlord's liens and delay in removing the liens, the meeting where Lakin called Richards and his son "liars," "cheats," or "thieves," the letter Lakin sent to Emerson concerning the leasing of its land, and Lakin's agent's attendance and remarks at the 2011 meeting held to determine the leasing rights of the cemetery farmland. We find Lakin's conduct in attempting to intimidate Richards into paying the allegedly unpaid rent was precisely calculated to erode Richards's standing in the community and harm Richards's business. Specifically, Lakin's multiple acts were meant to exploit Richards's financial vulnerability, and evidenced intentional malice. *Id.* An example of Lakin's reprehensible behavior is found in the letter he sent to Emerson: "In addition, as I am sure most or all of you know, your present tenant still owes me substantial cash rents from 2009 which is just one of the many reasons why I am no longer renting any of my farms to him." The open-ended language used in this letter, "just one of the many reasons," allows a reasonable person to conclude there are many things that make Richards an undesirable tenant and community member. The record in this case does not show Lakin was justified in making this broad assertion about Richards, and could only have been made with ill intent toward Richards.

We next consider the disparity between the damages suffered by Richards and the punitive damages award. The jury awarded Richards actual damages of $353,465 for his counterclaim for Lakin's interference with his prospective contractual relationships. The jury awarded Richards punitive damages totaling $1.4 million for Lakin's conduct, approximately four times the amount of actual damages awarded. The Supreme Court has "been reluctant to identify concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award." *Id.* at 424. The Court has declined to create a "bright-line ratio which a punitive damages award cannot exceed." *Id.* at 425. Though, "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Id.* A single-digit multiplier will more likely comport with due process, while also achieving the State's goal of deterrence or retribution. *Id.* This concept is illustrated in *BMW of North America v. Gore*, where the Court reversed a punitive damage award of $2,000,000 due to the low level of reprehensibility of the conduct and the 500:1 ratio between the award and the actual damage done. *BMW*, 517 U.S. at 581–82. In *BMW*, the actual harm came from the purchase of a new car that had been repainted without the knowledge of the purchaser. *Id.* However, there are exceptions, for example the Court upheld a $10 million punitive damage award when only $19,000 in actual damages were awarded. *See TXO Production Corp. v Alliance Resources Corp.*, 509 U.S. 443 (1993).

Echoing the federal precedent, our supreme court has stated "punitive damages must be reasonably related to actual damages," but punitive damages may be awarded even where actual damages were shown and not awarded. *Wilson v. IBP, Inc.*, 558 N.W.2d 132, 147 (Iowa 1996) (citing *Ryan v. Arneson*, 442 N.W.2d 491 (Iowa 1988). In *Wilson*, our supreme court upheld a punitive damage award of $2 million in a case where actual damages consisted of $4000. *Id.* at 148. Amongst the factors evaluated, the court considered the financial position of the defendant, IBP Incorporated, and reasoned:

> This bears on the factor of deterring like conduct in the future, also accepted by [the Supreme Court and the Iowa Supreme Court]. IBP is the largest producer of fresh beef and pork in the world. It operates eighteen separate beef or pork plants in nine states, as well as nineteen other plants, warehouses, tanneries and refineries. The company has a sales network of ten regional and international service centers in the United States, Europe, and Asia. IBP employs 29,000 people, had net sales in 1993 of $11.6 billion, and had a net worth in 1993 of $600 million.

*Id.* (citations omitted).

Like IBP, Lakin is wealthy. The jury was asked to consider this fact in its determination of the punitive damage award: "You may consider the Lakin's financial condition or ability to pay. You may not, however, award punitive damages solely because of the Lakin's wealth or ability to pay." The record shows Lakin was worth an estimated $150 million at the time of trial. A punitive damage award of $1.4 million was likely awarded by the jury in the spirit of deterring future reprehensible conduct by Lakin. A jury could determine only a large punitive damage award would send a message to someone of Lakin's substantial means. We find the punitive damage award was not excessive and

did not violate Lakin's due process rights. The district court did not err in its denial of Lakin's motion for judgment notwithstanding the verdict.

**AFFIRMED ON BOTH APPEALS.**