**IN THE COURT OF APPEALS OF IOWA**

No. 14-1342
Filed January 13, 2016

**RODRIGO LOPEZ CORTES and**
**SERGIO LOPEZ CORTES,**
        Plaintiffs-Appellees,

**vs.**

**FRANKLIN A. ROSALES,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Sioux County, Steven J. Andreasen, Judge.

        Franklin Rosales appeals from the jury's verdicts in favor of Rodrigo Lopez Cortes and Sergio Lopez Cortes. **MODIFIED AND AFFIRMED ON CONDITION, AND REMANDED.**

        Zachary S. Hindman of Bikakis, Mayne, Arneson, Hindman & Hisey, Sioux City, for appellant.

        Amanda J. Bahena of Woods, Fuller, Shultz & Smith, P.C., Sioux Center, for appellees.

        Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**DANILSON, Chief Judge.**

Franklin Rosales appeals from the jury's verdict in favor of Rodrigo Lopez Cortes and Sergio Lopez Cortes. Rosales's claims concerning the sufficiency of the evidence to support the conversion claims were not presented to the district court and, thus, are not preserved for our review. We find no abuse of discretion in the trial court's challenged evidentiary ruling. We order the remittitur of the punitive damages awarded by the jury to Rodrigo but find no basis to set aside the punitive damages to Sergio. Finally, we find no abuse of discretion in the court's denial of a new trial based upon Rosales's claim that the verdict "appears to be influenced by passion or prejudice." We modify and affirm on condition, and remand.

**I. Background Facts and Proceedings.**

Rodrigo and Sergio are brothers who work together and also raise, trade, and train Friesian horses. The brothers brought this action for conversion, fraud, damage to personal property, breach of contract, and unpaid expenses against Rosales claiming that in February 2010, Rosales took four horses belonging to Sergio, transported them to Guatemala, and sold them without their consent or having paid for them. They also asserted that in June 2012 Rosales took a pony belonging to the plaintiffs and transported the pony to Guatemala without their authorization. The brothers claimed too that Rosales owed them for stud fees and for the costs they incurred maintaining two mares held as collateral. The plaintiffs were allowed to amend their petition to assert a claim of punitive damages with respect to their conversion claims.

Rosales answered, admitting he did owe Rodrigo and Sergio money. However, although admitting he still owed some money for the four horses he took to Guatemala, he claimed the parties had agreed to a sale price of $24,000 and he had paid $18,700. He also claimed the pony was a "nuisance" pony the brothers gave to him. Rosales admitted he owed money for stud services, but disputed the amount owed for those services. He also disputed that he owed for the stabling of the mares because he had asked that they be returned and the brothers wrongly refused. Rosales counterclaimed for intentional infliction of emotional distress.

The case was tried to a jury in April 2014. The jury was presented with opposing versions of the disputes. As to the four horses—one of which was a registered Friesian stallion, Oepke, valued at $48,000—the plaintiffs testified that Rosales had never actually purchased these four horses and had no right to take them to Guatemala. They testified that they believed Rosales would not decide whether or not to purchase these horses until after the horses had been checked by the vet. Rosales, in contrast, contends he had entered into an agreement with the brothers to purchase the four horses for $24,000.

With respect to the pony that belonged to Rodrigo, which Rosales ultimately took to Guatemala to sell, the plaintiffs claim the pony was a family pet and Rosales was permitted to use the pony for stud services but it was then supposed to be returned to Rodrigo. Rosales claims Rodrigo asked Rosales to get rid of the pony because the pony was a danger to Rodrigo's stallions.

Concerning the claim that Rosales obtained stud services from the plaintiffs' stallion Piet, the plaintiffs stated Rosales obtained stud services at least

ten times, at a rate of $1000 per time, but never paid for those services. Rosales claimed he paid all the stud fees he owed.

Finally, with regard to the claim that Rosales owed the plaintiffs for their costs in having maintained his two mares, Rosales's wife brought these mares to the plaintiffs in August 2012 in order to obtain stud services. Rosales did not pay the stud fees or mare maintenance for those mares. The Lopez Cortes brothers asserted they retained possession of the mares in order to ensure that Rosales paid the stud fees, boarding costs, and other amounts he owed them. They testified this is standard practice in the horse breeding world. They asked for payment for boarding and care for Rosales's mares from August 2012 through the April 2014 trial. Rosales testified he demanded the return of the mares in September 2012 and the brothers wrongly refused.

The jury awarded damages to Sergio on his conversion claim in the amount of $55,000 (the four horses), to Sergio on his breach of contract claim in the amount of $10,000 (stud fees), to Rodrigo on his conversion claim in the amount of $500 (pony), and to Sergio and Rodrigo on their breach-of-contract claim in the amount of $17,940 (caring for the mares), for a total of $83,440 in compensatory damages. The jury also awarded punitive damages to Sergio in the amount of $40,000 and to Rodrigo in the amount of $20,000. Rosales filed a motion for judgment notwithstanding the verdict, for new trial, and for remittitur. The district court granted the motion for remittitur as to the punitive damages awarded to Rodrigo, holding that those punitive damages should be reduced from $20,000 to $5000. Rodrigo consented to the remittitur.

Rosales appeals.

**II. Standard of Review.**

This case was tried at law; therefore our review is for corrections of errors at law. Iowa R. App. P. 6.907; *see also Blackford v. Prairie Meadows Racetrack & Casino, Inc.*, 778 N.W.2d 184, 187 (Iowa 2010). "In a law action, findings of fact are binding on us if supported by substantial evidence." *Blackford*, 778 N.W.2d at 187. We view the evidence in the light most favorable to the judgment. *Miller v. Rohling*, 720 N.W.2d 562, 567 (Iowa 2006).

We review the district court's ruling on evidentiary issues for abuse of discretion. *Pexa v. Auto Owners Ins. Co.*, 686 N.W.2d 150, 158 (Iowa 2004).

We review the denial of a motion for judgment notwithstanding the verdict for correction of errors at law. *Channon v. United Parcel Serv. Inc.*, 629 N.W.2d 835, 859 (Iowa 2001).

"We review an award of punitive damages for correction of errors at law." *Wolf v. Wolf*, 690 N.W.2d 887, 893 (Iowa 2005). We review de novo a claim that a punitive damage award is excessive, in violation of the due process clause. *Id.* at 894.

**III. Discussion.**

*A. Sufficiency of the evidence of conversion and breach of contract.* In Rosales's first three issues and the subparts, he asserts the jury's findings of conversion and breach of contract for mare maintenance are not supported by substantial evidence. He contends the plaintiffs cannot recover on their conversion claim for an alleged breach of contract, Sergio "ratified any alleged conversion," and there was no evidence the parties entered into a contract for the boarding of Rosales's two mares. He claims he preserved error by moving for

directed verdict and filing post-trial motions for judgment notwithstanding the verdict.

"We review the denial of a motion for new trial based on the grounds asserted in the motion." *Fry v. Blauvelt*, 818 N.W.2d 123, 128 (Iowa 2012). The pages to which Rosales cites in his brief show the entirety of his motion for directed verdict consisted of this statement, "Move for a directed verdict, Your Honor." A review of his post-trial motion and brief shows a cursory statement that "there was insufficient evidence of each element of plaintiff's claims, including punitive damages." He then argued only that there was insufficient evidence to submit claims for punitive damages.

A motion for judgment notwithstanding the verdict "must stand on grounds raised in the movant's motion for directed verdict" and review on appeal is "limited to grounds raised in the directed verdict motion." *Lamb v. Manitowac Co.*, 570 N.W.2d 65, 67 (Iowa 1997). The claims now made on appeal were not raised below, and we do not address them. *See Mercer v. Pittway Corp.*, 616 N.W.2d 602, 629 (Iowa 2000) (noting appellant "did not raise this specific contention in its motion for directed verdict" and "therefore conclude that [appellant] failed to preserve error").

In any event, the plaintiffs' testimony is sufficient to support the claim for conversion of Sergio's horses and the pony. Rosales contends there was a contract to sell the horses; whereas the plaintiffs acknowledge some discussion of a sale, but no agreement was ever reached. While there was conflicting evidence on the issue, the determination of credibility of the witnesses is the province of the jury as fact finder. *Smidt v. Porter*, 695 N.W.2d 9, 22 (Iowa 2005)

("'[T]he credibility of witnesses is peculiarly the responsibility of the fact finder to assess.'" (citation omitted)).

Furthermore, the post-conversion acceptance of two horses from Rosales was approached as a mitigation of damage for conversion. The jury was instructed as to these points, and there were no objections to those instructions. There was also sufficient evidence of an implied contract that Rosales would pay the reasonable value of services and materials provided by the plaintiffs.

*B. Evidentiary ruling.* Rosales next contends the court abused its discretion in excluding evidence of the plaintiffs' "abusive horse-training practices." Defense counsel sought to present evidence that "Oepke [the stallion taken and sold by Rosales in Guatemala] was trained in an abusive manner." The court considered the issue carefully and provided cogent reasons for excluding the evidence, ruling:

> I would agree that based on Joan Dixon's testimony, the training methods may still be relevant to value because her opinion is that end product with the trainer who is using the, quote, abusive training methods may not be the same for somebody who purchases the horse and that can affect the value.
> However, I'm not sure that there is anything else to show that that opinion of Ms. Dixon relates to Oepke or any of the horses that were sold in the sense that her value didn't take into account any training methods, and from the testimony of Mr. Rosales so far as to what he offered and what his agreement was as to the value, I don't see a connection yet.
> I understand that it's arguably relevant, but it also can be prejudicial, so the Court is trying to get a sense and from a [rule of civil procedure 1.403] standpoint, if you think that there is some relevance beyond just I observed this.
> . . . .
> . . . The Court, again, [believes] abusive training methods would be potentially prejudicial to plaintiffs as a character and specific circumstances of that character in regard to the probative value of that testimony in regard to the value.

> The Court just doesn't see any connection anyway in regard to whatever training methods were used on Oepke and the value of Oepke, other than just a general, training methods can affect the value if they are not able to perform for the person to whom the horse is sold, but there is nothing establishing that type of circumstance with Oepke or any of the other horses involved. That would be the basis of the Court's ruling.

We find no abuse of discretion.

*C. Punitive damages.* Rosales also contends the claims for punitive damages are not supported by substantial evidence and should not have been submitted to the jury. We disagree.

To merit punitive damages, the plaintiff must prove "'by a preponderance of clear, convincing, and satisfactory evidence'" that the defendant acted in willful and wanton disregard for the rights or safety of another. *Wolf*, 690 N.W.2d at 893 (quoting Iowa Code § 668A.1). Further, "[t]o receive punitive damages, plaintiff must offer evidence of defendant's persistent course of conduct to show that the defendant acted with no care and with disregard to the consequences of those acts." *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co.,* 510 N.W.2d 152, 156 (Iowa 1993).

The trial court noted the jury awarded the plaintiffs punitive damages for their claims of conversion. Conversion is the wrongful taking of property. *See Lewis v. Jaeger*, 818 N.W.2d 165, 188 (Iowa 2012). It is a civil claim of theft. *Id.* The plaintiffs showed that Rosales took their horses and pony to Guatemala without permission, knowing the animals belonged to the plaintiffs, and benefitted financially when he sold the horses in Guatemala. There was sufficient evidence in regard to the conversion claim for a reasonable jury to conclude that Rosales's wrongful taking and selling of Sergio's four horses and Rodrigo's pony was in

reckless disregard for the rights of the plaintiffs. The jury specifically found the conduct of Rosales constituted willful and wanton conduct.

Rosales also argues the punitive damages awarded were excessive. In his brief, Rosales states, "The punitive damages award of $20,000 to Rodrigo was excessive and should be set aside."

> Because the plaintiff accepted a remittitur of its damages, the trial court overruled the defendants' motion for new trial and entered a judgment awarding damages in the reduced sums. Under our rules, this judgment is "deemed of no force and effect" when an appeal is taken, and the original judgment entered by the clerk on the jury's verdict pursuant to Iowa Rule of Civil Procedure 1.955 is "deemed reinstated." Iowa R. Civ. P. 1.1010(3). Therefore, we are not reviewing the trial court's decision to grant a conditional new trial; we are reviewing the trial court's denial of the defendants' motion for new trial.

*WSH Props. LLC v. Daniels*, 761 N.W.2d 45, 48 (Iowa 2008); *see also Bossuyt v. Ossage Nat'l Bank*, 360 N.W.2d 769, 776 (Iowa 1985). We review the district court's denial of a motion for a new trial based on the claim of an award of excessive damages for an abuse of discretion. *WSH Props.*, 761 N.W.2d at 49.

In *Wolf*, our supreme court summarized the considerations in determining the excessiveness of punitive damages:

> The [United States] Supreme Court has stated that an appellate court reviewing a punitive-damage award for excessiveness should consider three "guideposts." These guideposts are:
>> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the [trier of fact] and the civil penalties authorized or imposed in comparable cases.
>> . . . .
>> . . . The Court also said that "[t]he existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to

sustain a punitive damages award; and the absence of all of them renders any award suspect."

690 N.W.2d at 894 (internal citations omitted).

Punitive damages are considered excessive if they are not "reasonably related to actual damages." *Wilson v. IBP, Inc.*, 558 N.W.2d 132, 147 (Iowa 1996) (internal citations omitted). However, "our primary focus in review of a punitive damage award is the relationship between the punitive damage award and the wrongful conduct of the offending party." *Id.*

With respect to the reprehensibility of the defendant's misconduct, we are presented with the 2012 civil theft of a pony, which the trial court observed was a family pet having significance and importance beyond monetary value. However, the jury also determined Rosales had—two years earlier—taken four horses from Rodrigo's brother and sold them. Thus, Rosales's conduct was not a unique occurrence. Punitive damages "exist to punish the defendant and to deter the offending party and like-minded individuals from committing similar acts." *Ryan v. Arneson*, 422 N.W.2d 491, 496 (Iowa 1988).

With respect to the punitive damage award to Rodrigo, the jury awarded $500 in compensatory damages and punitive damages of $20,000. Although the punitive damage award was reduced to $5000 by the district court, the award of $20,000 was reinstated by the district court after Rosales appealed. The ratio of actual damages to the punitive damage award of $20,000 was forty to one, a ratio is similar to one found to be within "a constitutionally acceptable range based on the act of converting money belong to an employer, as well as other relevant factors." *Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 595

(Iowa 1999) (finding ratio of "nearly 43 to 1" was acceptable); *see also Wolf,* 690 N.W.2d at 895 (affirming a compensatory damage award of one dollar—plaintiff had waived all amounts over one dollar—and a punitive damage award of $25,000 in a case of tortious interference with custody rights); *Ryan,* 422 N.W.2d at 496 (comparing an actual award of $120 in a quiet title action to a punitive damage award of $18,600 and finding it was not excessive). *But see Wilson,* 558 N.W.2d at 148 (comparing, in a defamation action, actual harm of $4000 and $15 million in punitive damages and ordering remitter to $2 million in punitive damages based on the financial position of the defendant and deterring factor). Considering the difference between the punitive damages awarded by the jury ($20,000) and the civil penalties authorized, we note that theft of property exceeding $200 but not exceeding $500 is theft in the fourth degree, which is a serious misdemeanor. *See* Iowa Code §§ 714.2, 903.1(1)(b) (2011).

Taking the three guideposts into consideration, we conclude the punitive damages awarded to Rodrigo were excessive, but like the district court, we conclude Rosales's conduct supported a substantial award of punitive damages in the amount of $5000. We therefore hold that the trial court did not abuse its discretion in denying the motion for new trial on the condition that Rodrigo accept a remittitur.

Comparing Rosales's theft from Sergio of four horses with a value in excess of $50,000, in relation to the punitive damage award of $40,000 is less than a one-to-one ratio, however, which we do not find to be excessive.

Accordingly, we exercise our inherent right to order a remittitur. *See Miller v. Young,* 168 N.W.2d 45, 53 (Iowa 1969). If Rodrigo shall again file in this

proceeding in district court a consent to remit punitive damages in excess of $5000 within thirty days from the filing of this opinion, the judgment as modified shall stand and shall draw interest at the statutory rates from date of entry. *See id.*; *Larsen v. United Fed. Sav. & Loan Ass'n of Des Moines*, 300 N.W.2d 281, 289 (Iowa 1981). If the consent to remit is not so filed, a new trial as to damages and as to Rodrigo only is hereby ordered. *See* Iowa R. Civ. P. 1.1010.

*D. Passion and prejudice.* Finally, Rosales argues he should be awarded a new trial contending the verdicts were the result of passion or prejudice. In support of this argument, Rosales asserts there is "the presumption of prejudice" from the excessiveness of the punitive damages award,[1] which he claims is supported by the jury's decision to reject testimony[2] and "the inflammatory evidence the Plaintiff presented to the jury." We have already determined punitive damages could properly be submitted to the jury and were supported in the full amount to Sergio and in a lesser amount to Rodrigo. And, as previously noted, the jury was free to accept the plaintiffs' testimony and reject Rosales's testimony. *See Blume v. Auer*, 576 N.W.2d 122, 125-26 (Iowa Ct. App. 1997) ("The jury, as the finder of fact, is free to accept or reject evidence on . . . any . . . issue."). As for the remainder of his claims concerning "inflammatory" evidence,

---

[1] He states, "[T]he verdict here was, at least in part, flagrantly excessive. As explained above, the jury awarded Rodrigo punitive damages of $20,000."

[2] Rosales contends the plaintiffs' own evidence was that they later accepted two mares in full payment of two of four of Sergio's horses. Even if the jury accepted this as true, it changes nothing of the original theft of Sergio's horses except to mitigate damages. And the jury awarded damages for less than the full amount of the plaintiffs' valuation of the four horses.

either the claims were not preserved for review or we conclude the district court did not abuse its discretion in its evidentiary rulings.[3]

We therefore modify and affirm on condition Rodrigo again consent to remittitur of the punitive damages award, and remand.

**MODIFIED AND AFFIRMED ON CONDITION, AND REMANDED.**

---

[3] The district court's ruling on the motion for new trial includes the following:

> The Court agrees that questioning concerning an FBI report, Defendant's sale of the horses to a "narco" in Guatemala, the protection orders sought by Defendant from his spouse, Defendant's guilty plea to trespassing, a possible warrant, and civil judgments were not favorable for Defendant. That questioning and evidence, however, had some relevance to the claims asserted by the parties (the sale of the horses to a drug dealer in Guatemala relevant to question of whether the horses could be returned to Plaintiffs for the conversion claim; other circumstances occurring in Defendant's life relevant to his claim of damages for intentional infliction of emotional distress). Additionally, no objection was made at trial to the questions and testimony regarding the "narco" in Guatemala.