# IN THE COURT OF APPEALS OF IOWA

No. 20-1310
Filed January 27, 2022

**J.A. SMITH MACHINERY COMPANY, LTD.,**
  Plaintiff-Appellee,

**vs.**

**K.E. BUILDERS, LLC; DARIN KELLER; and TALOYRE KELLER,**
  Defendants-Appellants.
_____

Appeal from the Iowa District Court for Boone County, Christopher C. Polking, Judge.

Defendants appeal the district court decision awarding damages to plaintiff on the claim of conversion of a skid loader. **AFFIRMED IN PART AND REVERSED IN PART.**

Philip S. Bubb and Brandon R. Underwood of Fredrikson & Byron, P.A., Des Moines, for appellant.

Kirke C. Quinn and F.D. Chip Baltimore II of Law Offices of Kirke C. Quinn, Boone, for appellees.

Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

K.E. Builders, L.L.C.; Darin Keller; and Taloyre Keller[1] appeal the district court's decision awarding damages to J.A. Smith Machinery Co., Ltd. (Smith Machinery) on its claim of conversion of a skid loader. We affirm the district court on the grant of summary judgment on liability and the award of compensatory damages. We reverse the court's decision on the issue of punitive damages.

## I. Background Facts & Proceedings

James Smith (Smith) owns Smith Machinery. Smith Machinery owned a 1989 Bobcat 773 skid loader. Smith's son, Ryan Smith, sometimes used Smith Machinery's skid loader at his home. The Kellers lived across the street from Ryan and saw him using the skid loader. Ryan's home went into foreclosure and was sold at a sheriff's sale to the Kellers on March 19, 2019. In an affidavit filed as part of Smith Machinery's motion for summary judgment, Ryan stated he went to the home on the day of the sale to retrieve the skid loader but the key was missing so he could not remove it.

The day after the sale, Smith went to Ryan's former home looking for the skid loader. Smith did not know the Kellers, and they did not know him. When Smith found out the Kellers had the skid loader, he demanded that they return it. On April 2, through counsel, Smith formally demanded the return of the skid loader. He did not, however, provide proof of ownership. The Kellers did not return the skid loader. Smith bought a different skid loader for $16,000.

---

[1] We will refer to Darin and Taloyre Keller as the Kellers. Collectively, K.E. Builders and the Kellers will be referred to as the defendants.

On April 8, Smith Machinery brought an action against the defendants seeking damages under a theory of conversion. As an affirmative defense, the defendants pled Smith Machinery abandoned the skid loader. *See Larson v. Great W. Cas. Co.*, 482 N.W.2d 170, 173 (Iowa Ct. App. 1992) (noting there could be no recovery for conversion when plaintiff abandoned the property).

Smith Machinery filed a motion for summary judgment, claiming the defendants were liable as a matter of law. It claimed the defendants improperly kept the skid loader after they were informed it was owned by Smith Machinery. The defendants did not file a resistance or response to the motion for summary judgment. The defendants did not file any affidavits in support of their affirmative defense. The summary judgment hearing was unreported.

On December 4, the district court granted the motion for summary judgment on the issue of liability. The court found the facts presented in Smith Machinery's motion for summary judgment were uncontested. The court stated,

> A skid loader is not a fixture, it was not attached to the real estate, and without any other kind of bill of sale, acknowledgment of transfer or other positive act, the Defendants could not rightfully assume that a sale of real estate, pursuant to an in rem judgment, could purport to transfer an item of personal property. The Defendants exercise of control over the skid loader was inconsistent with and in derogation of [Smith Machinery's] possessory rights thereto. The issue of damages is left for trial.

The court also found the defendants failed to establish the defense of abandonment.

A hearing on the issue of damages was held on September 3, 2020. In Smith Machinery's initial disclosures, the skid loader was valued at $10,000. During the hearing, evidence was presented to show the 1989 skid loader was

purchased in 1999 for $11,650.[2]  Smith Machinery presented evidence to show newer Bobcat 773 skid loaders, built from 1998 to 2001, were selling for between $10,400 to $19,250.  Smith testified the value of his skid loader was $13,000 to $15,000.  However, he also stated he did not disagree with the value of $10,000 that was in the initial disclosures.

At the hearing on the damages issue, testimony was provided from the Kellers that after the sale they went into the home and found several items, including a bed, washer and dryer, and refrigerator.  The skid loader was in the garage.  The Kellers took the skid loader to their home.  They stated the skid loader had a small hydraulic leak.  It was not painted, had dog feces on it, and the seat was tattered.  They stated the key was in the skid loader.

At this same hearing, the Kellers testified they told Smith to contact the sheriff's department when confronted about the return of the skid loader.  The sheriff's department stated it was a civil matter.  The Kellers testified at the hearing on damages that they contacted the Story County Sheriff's Department twice, and both times were told that all the items in the home were included in the sale.

The district court found the fair market value of the skid loader was $10,000.  The court also found "even if the plaintiff could legally claim loss of use damages in a conversion case where they seek and have received the fair market value of the item, the plaintiff has failed to prove any loss of use damages."  The court found the Kellers' conduct showed malice toward Smith, who they believed was rude and

---

[2] This was the net cost to Smith.  Smith testified the skid loader cost $27,500 and after credit for a trade of a different skid loader, he only paid $11,650 for the skid loader at issue.

demanding. The court found they did not have a legal basis to keep the skid loader and were acting with spite and ill will. The court determined the defendants should pay punitive damages of $5000. The court declined Smith Machinery's request for common law attorney fees. The defendants appeal the district court decision.

## II.      Summary Judgment

The defendants claim the district court erred by granting Smith Machinery's motion for summary judgment. We review a district court's decision granting summary judgment for the correction of errors of law. *Jones v. Univ. of Iowa*, 836 N.W.2d 127, 139 (Iowa 2013). The Iowa Supreme Court has stated:

> A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In other words, summary judgment is appropriate if the record reveals a conflict only concerns the legal consequences of undisputed facts. When reviewing a court's decision to grant summary judgment, we examine the record in the light most favorable to the nonmoving party and we draw all legitimate inferences the evidence bears in order to establish the existence of questions of fact.

*Id.* at 139–40 (quoting *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 96–97 (Iowa 2012)). The party seeking summary judgment has the burden to show there are no genuine issues of material fact and the party is entitled to a judgment as a matter of law. *Morris v. Steffes Group, Inc.*, 924 N.W.2d 491, 496 (Iowa 2019).

Defendants claim summary judgment was not appropriate because Smith Machinery failed to show all the elements of a claim of conversion. They also claim the skid loader was abandoned. Defendants did not file a resistance to the motion for summary judgment. Smith Machinery's statement of undisputed facts was not challenged by defendants. No record was made of the summary judgment

hearing, but apparently no evidence was presented at the hearing and it consisted only of arguments by the parties.

"A party resisting a motion for summary judgment cannot rely on the mere assertions in his pleadings but must come forward with evidence to demonstrate that a genuine issue of fact is presented." *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 827 (Iowa 2007). "If the summary judgment record shows that the 'resisting party has no evidence to factually support an outcome determinative element of that party's claim, the moving party will prevail on summary judgment.'" *R.J. Meyers Co. v. Reinke Mfg. Co.*, 885 N.W.2d 429, 435 (Iowa Ct. App. 2016) (quoting *Wilson v. Darr*, 553 N.W.2d 579, 582 (Iowa 1996)).

Defendants did not come forward with evidence to demonstrate there was a genuine issue of material fact. *See Stevens*, 728 N.W.2d at 827. They did not resist Smith Machinery's statement of undisputed facts or present any affidavits to support their own claims. Smith Machinery was entitled to prevail on its motion for summary judgment because defendants did not alert the court to any evidence to support their claims, including their claim of abandonment. We conclude the district court properly granted summary judgment to Smith Machinery.

### III.    Compensatory Damages

The defendants claim there is not sufficient evidence in the record to support the district court's award of $10,000 in compensatory damages. They assert the evidence presented by Smith Machinery to show the value of the 1989 Bobcat 773 skid loader was overly speculative. They also assert there was no factual basis to show the value of the skid loader was $10,000.

We review civil conversion claims for the correction of errors at law. *Podraza v. City of Carter Lake*, 524 N.W.2d 198, 202 (Iowa 1994). The district court's factual findings are binding if they are supported by substantial evidence. *FS Credit Corp. v. Troy Elevator, Inc.*, 421 N.W.2d 537, 538 (Iowa 1988). "Evidence is substantial if a reasonable mind would accept it as adequate to support a conclusion." *Id.* We view the evidence in the light most favorable to the district court's findings. *Id.*

"The measure of damages in an action for conversion ordinarily is the 'fair and reasonable market value at the time and place of taking.'" *F.S. Credit Corp. v. Shear Elevator, Inc.*, 377 N.W.2d 227, 234–35 (Iowa 1985) (citation omitted); *see also Meirick v. Dunn*, No. 05-1208, 2006 WL 1896337, at *1 (Iowa Ct. App. July 12, 2006). Fair market value means "the price a willing buyer under no compulsion to buy would pay and a willing seller under no compulsion to sell would accept." *Federal Land Bank v. Sleister*, 444 N.W.2d 504, 505 (Iowa 1989).

A party seeking damages has the burden to show damages were incurred and the amount of damages. *Data Documents, Inc. v. Pottawattamie Cnty.*, 604 N.W.2d 611, 616 (Iowa 2000). "If the evidence is speculative and uncertain whether damages have been sustained, damages are denied. However, if the uncertainty merely lies in the amount of damages sustained, 'recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated.'" *Pavone v. Kirke*, 801 N.W.2d 477, 495 (Iowa 2011) (citations omitted). "Although proof of damages need not be shown with mathematical certainty, plaintiff must at least present sufficient evidence to allow the factfinder to make an approximate estimate of the loss." *Data Documents*, 604 N.W.2d at

616–17 (citation omitted). "Iowa courts 'take a broad view in determining the sufficiency of evidence of damages.'" *Hammes v. JCLB Props., LLC*, 764 N.W.2d 552, 558 (Iowa Ct. App. 2008) (citation omitted).

Smith Machinery submitted initial disclosures pursuant to Iowa Rule of Civil Procedure 1.500, which stated the fair market value of the skid loader was $10,000. At the trial, Smith testified there was a bid of $13,100 for a 1999 Bobcat 773 skid loader in October 2019. He also testified about a Bobcat 773 skid loader listed for sale at $13,800. He stated this was a fair and reasonable price. Additionally, he testified there was a 2000 Bobcat 773 skid loader that sold for $19,250 in November 2019. In an auction in April 2018, a Bobcat skid loader sold for $10,400. Smith gave the opinion that his skid loader was worth $13,000 to $15,000. Smith, however, also stated he had no reason to disagree with the value of $10,000 given in the initial disclosures.

Smith Machinery presented sufficient evidence to allow the court to make an approximate estimate of the value of the skid loader. *See Data Documents*, 604 N.W.2d at 616–17. Smith Machinery sold new and used equipment, including skid loaders. Smith also conducted auctions as part of a separate business for industrial, commercial, and construction businesses. Smith testified he "probably sold a hundred some skid loaders over the years." From his experience, Smith could give his opinion of the value of the skid loader involved in this case. He supported his opinion by giving examples of recent sales of other comparable skid loaders. As noted, we "take a broad view in determining the sufficiency of evidence of damages." *See Hammes*, 764 N.W.2d at 558. We conclude there is sufficient

evidence in the record to support the district court's determination the skid loader was worth $10,000.

## IV.    Punitive Damages

Defendants claim the record does not support an award of punitive damages.  The court found the Kellers' conduct showed malice toward Smith Machinery, and they were acting with spite and ill will.  The court determined the defendants should pay punitive damages of $5000.

Punitive damages must be supported by clear, convincing, and satisfactory evidence.  Iowa Code § 668A.1(1)(a) (2019); *accord Condon Auto Sales & Serv., Inc. v. Crick*, 604 N.W.2d 587, 594 (Iowa 1999).  The Iowa Court of Appeals has stated:

> An award of punitive damages is appropriate only when a party acts with actual or legal malice.  Actual malice is shown by such things as personal spite, hatred, or ill will.  Legal malice is established by showing wrongful conduct committed with a willful or reckless disregard for the rights of another.  A jury to award punitive damages must find that "the conduct . . . from which the claim arose constituted willful and wanton disregard for the rights or safety of another."  Iowa Code § 668A.1(1)(a).

*Larson*, 482 N.W.2d at 174 (some citations omitted).

The district court relied on Taloyre Keller's statement, "I could go on, and I could tell you that this possibly could have ended completely different if there wasn't the amount of shit left in that home," referring to the amount of dog feces in the home purchased in the foreclosure sale.  She quickly retracted that statement, however, and testified:

> I don't know if it would have been differently rectified, but I want to say if Mr. Smith wouldn't have come at us in such a negative way demanding we return the skidloader that I don't even know that it's his that was left on the property after the sheriff's sale.

Taloyre, who was the manager of K.E. Builders, testified she did not want to have a confrontation with Smith about the skid loader and asked him to work it out through the sheriff's department because defendants believed they purchased everything in the home, including the skid loader, at the time of the sheriff's sale. Defendants did not have an independent relationship with Smith or Smith Machinery. They purchased a home formerly owned by Ryan. Thus, the condition of the home after the foreclosure sale reflected on Ryan, not Smith Machinery. There is a lack of evidence as to the Kellers' personal spite, hatred, or ill will toward Smith Machinery based on dog feces in Ryan's home. Also, while Taylore's statement shows she considered that Smith acted in a negative and demanding manner, she also testified she was not irritated by his conduct. She testified she did not have any malice or ill will toward Smith or Smith Machinery.

We find there is not clear, convincing, and satisfactory evidence to show defendants had actual malice toward Smith Machinery. The evidence does not show defendants were acting out of "personal spite, hatred, or ill-will." *See Cawthorn v. Catholic Health Initiatives Iowa Corp.*, 743 N.W.2d 525, 529 (Iowa 2007). Punitive damages are not awarded for conduct that is merely objectionable. *Larson*, 482 N.W.2d at 175. "Punitive damages are justified when the acts of the defendant are malicious." *Condon Auto Sales & Serv.*, 604 N.W.2d at 594.

We turn to the issue of legal malice. The Kellers assert that they had a good faith belief that they owned the skid loader as a result of the foreclosure sale. They point out that they asked the sheriff's department two times if they owned the personal property in the home. The Kellers state that they were assured they owned everything in the home. Based on this advice, the Kellers assumed they

owned the skid loader. The Kellers state that they also had good faith doubts about who owned the skid loader before the sale—Ryan, Smith, or Smith Machinery. The Kellers state that Smith Machinery did not provide them with any evidence of its ownership until Smith Machinery filed proposed trial exhibits in December 2019. They state that they were not obliged to turn over the skid loader based on Smith's unverified assertions of ownership.

We conclude there is not clear, convincing, and satisfactory evidence to show the Kellers engaged in "wrongful conduct committed with a willful or reckless disregard of the rights of another." *See Van Sickle Constr. Co. v. Wachovia Commercial Mortg., Inc.*, 783 N.W.2d 684, 690 (Iowa 2010). "To receive punitive damages, plaintiff must offer evidence of defendant's persistent course of conduct to show that the defendant acted with no care and with disregard to the consequences of those acts." *Cawthorn*, 743 N.W.2d at 529 (quoting *Wolf v. Wolf*, 690 N.W.2d 887, 893 (Iowa 2005)). We determine the evidence does not support a finding that the defendants acted with legal malice.

Having concluded there is not clear, convincing or satisfactory evidence to show defendants acted with actual or legal malice, we determine the award of punitive damages is not supported by the record. We reverse the award of punitive damages.

We affirm the district court on the grant of summary judgment on liability and compensatory damages. We reverse the court's decision on the issue of punitive damages.

**AFFIRMED IN PART AND REVERSED IN PART.**

Vaitheswaran, P.J., concurs; Greer, J., partially dissents.

**GREER, Judge** (concurring in part and dissenting in part).

I concur with the majority opinion with one exception—I would affirm the district court's award of punitive damages to J.A. Smith Machinery Company, Ltd. (Smith Machinery). The actions of Darin and Taloyre Keller (Kellers) of not returning a skid loader to its owner amounted to willful and wanton conduct under these facts. An award of punitive damages is "appropriate when a tort is committed with 'either actual or legal malice.'" *Wolf v. Wolf*, 690 N.W.2d 887, 893 (Iowa 2005) (citation omitted). "[L]egal malice may be shown by wrongful conduct committed with a willful or reckless disregard for the rights of another." *Id.* (citation omitted). I agree that Smith Machinery did not prove actual malice but find that the Kellers engaged in a "persistent course of conduct" that showed they "acted with no care and with disregard to the consequences of [their] acts." *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co.*, 510 N.W.2d 153, 156 (Iowa 1993) (citation omitted). Smith Machinery showed "by a preponderance of clear, convincing, and satisfactory evidence" that the Kellers' conduct "amounted to a willful and wanton disregard" for Smith Machinery's right to its equipment. *Id.*

This is why I would affirm. Granted, K.E. Builders[3] purchased Ryan Smith's home at a March 19 foreclosure sale and Ryan left a Smith Machinery skid loader at the property until the day of the sale. But on the day following the sheriff's sale, after learning that the key had been removed from the skid loader,[4] the owner of Smith Machinery, Jim Smith (Smith), went to the property and approached a

---

[3] Darin Keller testified he was the president of the company, and Taloyre described herself as the owner of K.E. Builders.

[4] The undisputed evidence at trial was that Ryan tried to retrieve the skid loader the day of the foreclosure sale and the key was missing.

person cleaning the site. Learning she was not the new owner, he asked for the owner's contact information. She called and reported to Smith, "[T]hey don't want to talk to you." After Smith's urging, she called them again and told Smith once more, "they don't want to talk to you." Smith obtained the cell phone number of the owners and sent a text message stating he wanted his skid loader back. Even so, Taloyre testified she did not respond until the third text message from Smith when she sent a text responding that the Kellers owned all of the contents on the property. Back and forth texting occurred with no resolution. At trial, Taloyre acknowledged that Smith was a third party asking for his property but felt she should be dealing with Ryan as the previous owner. Even with notice that someone else might own the skid loader, Taloyre expressed her attitude about the situation:

> But when I got to the house and I opened the door and the skid loader was there and I called the sheriff again, they then confirmed again that all the contents of the house were mine, just like the dog shit, just like the bed, just like the cabinets, just like the washer and dryer, the refrigerator, the pergola and I think—that's it.
>     I could go on, and I could tell you that this possibly could have ended completely different if there wasn't the amount of shit left in that home.
>     Q. So you were upset by the quantity of dog feces left in the home? A. Well, it was kind of disturbing, sir.
>      . . . .
>     I don't know if it would have been differently rectified, but I want to say if Mr. Smith wouldn't have come at us in such a negative way demanding we return the skid loader that I don't even know that it's his that was left on the property after the sheriff's sale.

We appreciate that the district court viewed the demeanor and inflection of each witness and concluded that other inappropriate factors influenced the Kellers' behavior. *See Tim O'Neill Chevrolet, Inc. v. Forristall*, 551 N.W.2d 611, 614 (Iowa

1996) ("The district court has a better opportunity than we do to evaluate the credibility of witnesses."). In the summary of facts, the district court stated:

> Although Taloyre understood that [Smith] did not own the real estate they had purchased, she testified that the result with the skid loader could have been different if there was "not so much dog shit" at the house, and if [Smith] had not come at them so negative and demanding. She testified that if the skid loader meant so much to him, it should not have been left at the home.

The majority believes Taloyre walked back this attitude, but I would give the court credit for the first-hand view of her demeanor. With that in mind, finding an award of punitive damages was warranted, the district court noted:

> [D]efendants own stated reasons for their intransigence on the issue were:
> (1) The amount of "dog shit" left in the house they purchased
> (2) Their perception that Jim Smith was negative and demanding, and had been rude to their employees.
> The first reason willfully and wantonly disregards that it was not Jim Smith's house they had purchased at foreclosure, and that he had no legal obligation for the condition of the house. The second reason has no legal basis, and instead evidences malice towards Jim Smith. While defendants at times in their testimony tried to walk these reasonings back, they repeatedly made statements during the testimony about these factors. The factors had no valid legal basis, but clearly informed the motivations of the defendants.

Jim Smith did not own the property, he owned the skid loader. The Kellers projected their animus onto a third party, who happened to be a relative.

Unable to convince the Kellers otherwise, on April 2, counsel for Smith Machinery wrote a detailed letter to Taloyre. That letter set forth the legal position of Smith Machinery as to its ownership of the skid loader and what K.E. Builders actually purchased at the sheriff's sale, and it demanded immediate return of the machinery to its owner. Counsel correctly clarified that K. E. Builders bought only the real estate and that a skid loader was not included in the sale. Keller was

asked to contact counsel by April 4 or legal action would be initiated. The deadline passed with no response and no return of the skid loader. In fact, the skid loader was never returned to Smith.

Even in this appeal, K.E. Builders and the Kellers assert a position that they had a good faith belief the skid loader was abandoned. Under the best argument, abandonment can only apply if the skid loader belonged to Ryan. It is difficult to understand how the Kellers can maintain that an abandonment claim protects them from a punitive damage award when the day after the sheriff's sale, Smith texted Taloyre that he wanted the skid loader back. Advocating this losing position to retain ownership of an asset of another shows a heedless disregard for Smith Machinery's right to its property. *See Miranda v. Said*, 836 N.W.2d 8, 34 (Iowa 2013) (noting the "acts must manifest a heedless disregard for or indifference to the rights of others" and a showing of "a persistent course of conduct to show no care with disregard of consequences" (quoting *Vipond v. Jergensen*, 148 N.W.2d 598, 600–01 (Iowa 1967))). K.E. Builders and the Kellers were on that course and had many chances to leave that path with numerous opportunities to make the situation right. The district court compared this case to *Becker v. Longinaker*, No. 09-0833, 2010 WL 1578400, at *10–11 (Iowa Ct. App. Apr. 21, 2010). There, we agreed with the district court when it upheld the jury's award of punitive damages:

> The bank made no effort to identify or segregate the horses or take any other precautions to avoid the unfortunate event that actually occurred. The evidence supports [the jury's] conclusion that the defendants' actions were in total disregard of the rights of Kim Becker, who they knew to have had horses on the property. In support of their disregard of her rights, the [b]ank was unwilling to immediately proceed to return the horses of Kim Becker upon discovering their mistake and error but rather held them for additional collateral of Pamela Morgan.

*Id.* at *11 (first alteration in original).  The same can be said of the actions of these defendants here.  Concluding the Kellers operated with a willful and reckless disregard of the rights of Smith Machinery as to the skid loader, the district court awarded a reasonable award of punitive damages.  I would find the Kellers operated with legal malice and the award was proper.